Agatha Barnes, Plaintiff-Appellant, v. William Powell, Defendant-Appellee.
LaSalle National Insurance Company, a Corporation, Intervenor-Appellee, v. Agatha Barnes and William Powell, Respondents-Appellants.

Gen. No. 69–86.

Third District.

September 11, 1970.

John P. Hayes, John B. Cashion, and Martin Smith, of Chicago, for appellant.

Robson, Masters, Ryan, Brumund & Belom, of Joliet, and Sidney Z. Karasik, of Chicago, for appellee.

ALLOY, J.

Plaintiff Agatha Barnes was injured while riding as a passenger in an automobile owned by her and her husband and driven by a friend to whom she had given permission to drive the automobile. The driver had no automobile insurance of his own. Plaintiff asserts a right to recover against the insurance company which insured the automobile (her husband's insurance company), on the theory that the driver to whom she had loaned the automobile was an uninsured motorist.

The record discloses that plaintiff was riding in an automobile driven by William Powell which was involved in a one-car accident when it ran off the road striking a large rock. On the date of the accident, the certificate of title to the automobile was in the name of Ernest Barnes, although the bill of sale for the automobile contained the names of both Ernest Barnes and Agatha Barnes and the automobile was also licensed in both names. Ernest Barnes, husband of plaintiff, was named an insured on the automobile insurance policy of LaSalle National Insurance Company. Mrs. Barnes and her husband were separated in October, 1964. William Powell, the defendant, was a tenant in an upstairs apartment rented to him by plaintiff Mrs. Barnes. She had given defendant William Powell permission to drive the automobile, and was riding in the automobile owned by her and her husband as a passenger at the time of the accident.

After Mrs. Barnes filed an action against William Powell, LaSalle National Insurance Company (which in-

17

sured the automobile) intervened and asked for a declaratory judgment determining whether LaSalle National Insurance Company was responsible under its policy to defend William Powell and pay up to the policy limits in the event Powell was found liable for the accident. Plaintiff answered and counterclaimed for declaratory judgment requesting a determination as to whether she had any coverage for her injuries under the "Uninsured Motorists Coverage" section of the LaSalle National Insurance Company policy. The pleadings admitted that William Powell had no insurance policy of his own. It was also admitted at a hearing that plaintiff Mrs. Barnes was not entitled to any coverage under the liability section of the LaSalle policy, which was in the amount of $20,000–$40,000. The policy contained a $1,000 medical coverage provision and the LaSalle Company admitted that this amount was due Mrs. Barnes. The policy also contained a $10,000–$20,000 uninsured motorist coverage provision. This provision specified that the company would pay all sums which the insured or his legal representative would be legally entitled to recover as damages from the owner or operator of an "uninsured automobile" because of bodily injury sustained by the insured caused by accident and arising out of "the ownership, maintenance or use of such uninsured automobile." It also contained an arbitration clause. The policy identified persons "insured" as the named insured and any relative and any other person while occupying an insured automobile. An insured automobile is defined as an owned automobile used by the insured or "by any other person to whom the named insured has given permission to use such automobile." An "uninsured automobile" is defined in the policy as an automobile in which there is "no bodily injury or liability bond or insurance policy applicable . . . for the use of such automobile." There is also an express provision that "uninsured automobile" shall not include "an insured automobile." The "named"

18

insured was specifically designated to mean the individual or husband and wife named in the declaration.

On May 13, 1969, the trial court entered an order finding that there was no coverage for plaintiff under either the "liability" or "uninsured motorist" coverages of the LaSalle policy. On appeal in this Court, plaintiff specifically contends that the "uninsured motorist" coverage should be made available to plaintiff; that such coverage was not reduced by the $1,000 medical pay provision; and, that the arbitration clause of the policy was invalid.

At least in a factual sense, we are dealing with a novel question, since there are no cases which have been called to our attention or that we have discovered which dealt with the problem of a single car accident involving an automobile owned by a plaintiff, where the driver is selected or approved by plaintiff and the owner as a passenger is injured in the accident. Under the wording contained in the LaSalle insurance policy, it is made reasonably clear that the uninsured motorist coverage was not designed to be available to plaintiff. The policy refers to damages from the owner or operator of "an uninsured automobile." Obviously, the automobile in the case before us was not an "uninsured automobile," since there was a policy of insurance covering it. The policy likewise specifically provides that an "uninsured automobile" could not be an "insured automobile" such as the automobile in the case before us. Counsel for the parties substantially agreed that under the policy terms there was no uninsured motorist coverage specifically provided for. It is contended, however, that the policy must be regarded as providing uninsured motorist coverage, irrespective of the policy language, in view of the public policy of this state and the statute providing for uninsured motorist coverage (1969 Ill Rev Stats, c 73, § 755a).

█ The argument of plaintiff is based principally on the language of the court in the case of Smiley v. Estate

19

of Toney, 44 Ill2d 127, 254 NE2d 440. In the Smiley case, two cars were involved in an accident where the driver of the car causing the accident had liability insurance with $20,000–$40,000 limits. Plaintiffs recovered a judgment for more than defendant's liability limits and sought to recover from their own insurance company for the difference, on the theory that the driver of the other automobile was "uninsured" to the extent that their damages exceeded the proceeds of the other driver's liability insurance. It was argued in that case that the restrictive definition of an uninsured vehicle contained in that insurance policy was invalid because it conflicts with the purpose of the uninsured motorists section of the Insurance Code. The Supreme Court in that case refused to expand the uninsured motorist coverage to allow plaintiff to recover on the theory that the driver of the automobile causing the accident was insured within the limits that met the minimum requirements of the Illinois Financial Responsibility Law, and that, therefore, the defendant was not an "uninsured motorist." The court, however, in that case stated (at pages 130–1):

"We are not persuaded that the policy definition of an 'uninsured vehicle', if it is unambiguous, must always control the application of the statute. The statutory coverage is mandatory, and it may not be whittled away by an unduly restrictive definition. Indeed, the defendant concedes as much, pointing out that 'research of the case law' indicates that before the uninsured motorist provisions of a policy come into operation it is necessary 'that the tortfeasor does, in fact, constitute an uninsured motorist, either being insured for less than the Financial Responsibility Law of the state in which the accident occurred, or by his insurance company denying coverage due to a variety of reasons.' And indeed, it is generally recognized, for example, that despite a

20

contrary policy definition, the purpose of an uninsured vehicle statute requires that a motorist be considered uninsured if he carried liability insurance in an amount below the minimum required by the financial responsibility law."

The implication of the language of the Smiley case is that if the definition in the policy of what is an "uninsured motorist" is so strict that it actually circumvents the purpose of the statute relating to uninsured motorist coverage, the court would not hesitate to override the policy definition and use its own definition of what constitutes an uninsured motorist. We agree that insurance companies should not be permitted to "whittle away" the benefits of uninsured motorist coverage by restricting the definition of what constitutes an uninsured motorist. Upon this basis, plaintiff argues that the court should disregard the terms of the LaSalle policy and find that Powell was really an "uninsured motorist."

We have noted, however, that in most of the Illinois cases involving interpretation of uninsured motorist coverage, the court has been dealing with the problem of conflicting "excess" and "pro rata" and "other insurance" clauses in the policies, and, in no case which has been called to our attention, has there been an effort to extend uninsured motorist coverage to a factual situation such as we have before us in the present case. In the Smiley case and in Tindall v. Farmers Automobile Management Corp., 83 Ill App2d 165, 226 NE2d 397, the courts refused to broaden the uninsured motorist coverage, basing their conclusion on the fact that the driver at fault was carrying insurance in compliance with the financial responsibility law.

In Dreher v. Aetna Casualty & Surety Co., 83 Ill App 2d 141, 226 NE2d 287, plaintiff was injured by another automobile and the driver of such automobile was insured by a company that became insolvent between the

time of the accident and plaintiff's recovery of a judgment. Plaintiff argued that he should have uninsured motorist coverage in this situation, but such coverage was refused by the court even though it felt that a liberal construction should be made in favor of the policyholder. The court in that case stated (at pages 143–4) that it found nothing either in the statute or case law to sustain the contention that the public policy of the state, at the time, required that an insurance company extend coverage beyond the terms of the contract of insurance to include an automobile which was insured at the time of the accident, but which subsequently became uninsured by reason of the insolvency of the carrier. We simply cite this case as an example of an interpretation which has been made by other Illinois courts in attempting to maintain the uninsured motorist coverage on a basis consistent with the statute.

 Under section 755a (c 73, 1969 Ill Rev Stats) which requires insurance companies to offer uninsured motorist coverage on all automobile insurance policies, it is expressly provided that such insurance is offered for "protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles." As we interpret the statute, we find it difficult to rationalize a conclusion that liability should be imposed under such statute, as to one who drives the automobile with the owner's permission and with the owner as the injured passenger in the car. While it may be argued that the driver is truly uninsured as to the plaintiff, since he had no automobile insurance policy of his own nor any liability coverage, we must note the fact that plaintiff herself gave Powell permission to drive the automobile and she got in and rode with him. As we read the statute, the theory of uninsured motorist coverage is to protect people from being injured by other drivers who have no insurance and, presumably, over whom they have no con-

22

trol. While it may be consistent with the broad ultimate objectives of uninsured motorist coverage to cover persons such as defendant in this case, we do not believe that we would be justified, under the statutory provisions, to extend the interpretation of uninsured motorist coverage to a situation such as we have in the instant case. It is our conclusion that, on the basis of the language of the act, the instant case involves a situation to which the act was not intended to apply. While we favor a liberal construction of all such statutory provisions, we agree that the facts before us present a unique situation which, in all probability, was not contemplated by the legislature when it enacted the statute. It is probable that other similar situations may arise and that the public policy of this state, as expressed by the legislature, should require a broadening of such coverage. As we have indicated, however, we believe this is a legislative problem and we do not believe that we would be justified in interpreting the statute to provide for such coverage under the facts before us.

In view of our determination, the question of the effect of the arbitration provision and whether or not the $1,000 medical payment should be set off need not be discussed.

The judgment of the Circuit Court of Will County will, therefore, be affirmed.

Affirmed.

RYAN, P. J. and STOUDER, J., concur.