I. Stanley Rosenthal, J.
This was a trial of an information containing three counts alleging violation of the Tow Car Ordinance of the Town of Oyster Bay. The second count having been disposed of at the end of the People’s case for the reasons set forth in the record,, we are presently concerned only with counts one and three.
There are several phases of the remaining charges, factual, legal and constitutional. They will be dealt with in that order. facts:
As in every trial of this nature there are contradictions as to what happened at the time and place in question concerning this incident. The People through the testimony of three Nassau County police officers establish the facts as follows:
An automobile accident had occurred on Buckram Road in Locust Valley wherein a plesasure vehicle had apparently gone out of control across the road, onto a sidewalk, and into a yard *607 of a private home where it ended up against a tree. Nassau County police officer Ruderman while on motor patrol in the vicinity received a radio call and proceeded to the scene of the accident. He found the car as above described but there was no occupant of the car present nor anywhere near the car. As a matter of fact Patrolman Ruderman never saw any driver or occupant of that car. After inspecting the position of and damage to that car and speaking to people who were standing around at the scene, when he turned back to his police car, he saw a tow truck parked directly in back of his police car. It is uncertain from the minutes whether the tow car had flashing lights upon it but in describing the tow car he said “ Well, it was a regular tow car with the thing that picks up cars with, with the lights that they have on them, Sir.” Describing these lights to the court his answer was “ Well, they have the red lights that go on and off ’ ’.
The officer further testified that he saw Mr. Francis standing beside the tow truck, that he went over to him, told him that he knew he was not supposed to be there and to get out of there. The defendant refused to leave the scene and after Patrolman Ruderman went back to the damaged car and received a message from the Fire Department ambulance that the driver was okay and was going to leave his car where it was with the permission of the property owners, Patrolman Ruderman went back to Francis and again told him to move on and further told him that if he did not he would be locked up. Francis in effect dared him to do so. Then pursuant to police regulations, Ruderman called for assistance and arrested Francis.
It is conceded that Francis did not verbally solicit the business of removing the damaged automobile either from the owner or the operator of the car, as he was not even present, nor from the police officer, who would have been the only other person authorized to cause the damaged automobile to be removed. It is further conceded that the tow car did not carry the medalion from the Town of Oyster Bay which would have been required for that tow truck to engage in the business of towing, and also it is conceded that Francis was not a duly licensed operator or helper to engage in such activity in the Town of Oyster Bay. The testimony is that Francis ‘ ‘ hung around ’ ’ for well over half an hour before he was arrested. Therefore, the question is posed as to whether he was there and remained there as an idle onlooker or whether in fact he was staying there for the purpose of getting the towing business which might result from his continued presence, in short, whether or not by his actions he was actually soliciting.
*608 The two other police officers, Patrolman G-ladd and Patrolman Gordon, substantially corroborated Patrolman Ruderman’s account from the time they arrived at the scene, with minor discrepancies as to whether at any given moment Francis was sitting in the tow car or standing outside of the tow car, on one side or the other of it. Francis himself testified that when he first arrived at the scene he asked -Patrolman Ruderman ‘ ‘ Can I give you any assistance ” and that Ruderman told him “ Put your truck on the side of the road”. Defendant’s version as to this appears unlikely in view of the fact that a half-hour later Ruderman placed Francis under arrest.
Basically, this is the factual situation of this occurrence with the exception that from the fire house Francis phoned one of the Scott brothers, his employer, to send over and remove the tow truck from where it had been left at the scene of the accident. His explanation for being on Buckram Road and stopping at that spot, was that he was on his way home to Lattingtown, and decided to stop at the only delicatessen open at that hour to pick up something. This took him past the site where the incident occurred.
the law :
The law claimed to have been violated in this case is the tf Tow Car Ordinance ” of the Town of Oyster Bay which was duly enacted on October 6, 1959, and amended on November 20, 1962. Section 1.0 of article I sets forth the necessity for such an ordinance for the removal of a disabled vehicle which might retard the movement of traffic and cause accidents and as a matter of public interest and protection places controls and supervision over such activities.
Section 3.0 etc. of article III concern an owner’s obligation to properly license any tow truck owned by him pursuant to the said ordinance, which does not apply to this defendant inasmuch as he was not the owner of the vehicle, nor was he a licensed tow car driver or helper, so section 11.0 (c) of article XI would not apply to him either. His testimony was, he was not engaged or working on that tow car. This second count of the information was dismissed at end of People’s case as previously indicated and we are concerned now only with the first and third counts. Section 4.0 of article IV states that it shall be unlawful for any person to operate a tow car for hire in the Town of Oyster Bay * * # unless such driver or helper shall have first obtained a license from the Town Clerk, as hereinafter provided.
Here we come to a very touchy point in this case, which is, whether the testimony as adduced on this trial shows the *609 defendant to have been driving this tow ear for hire without being properly licensed to do so. This is the charge against the defendant in the first count of the information and it would appear from the record that at no time was the defendant hired nor was he operating the truck for hire and therefore in the opinion of the court this count of the information must fall.
The defendant has endeavored in his argumentation and brief to twist the charge into one which would interpret the ordinance into meaning that a duly New York State licensed vehicle could not be operated on the roads in Oyster Bay township without special licensing on the part of the town because of the type of vehicle that it was. I do not interpret the ordinance to mean that. If that were so it might well be an unconstitutional law restricting a certain class of vehicle from the use of the town roads. However, it would not be unconstitutional law if it were regulatory and the only restrictions placed upon the use of the road by such vehicles were when they were being used in the conduct of the towing business and for hire.
This is in accord with Judge Donovan’s decision in People v. Verity (50 Misc 2d 50) and Gotham Sand & Stone Corp. v. Incorporated Vil. of Roslyn (20 Misc 2d 478).
As stated in the Verity case (p. 50), “ Neither a town, nor a village has the absolute power to exclude vehicles from its streets ’ ’. However, they may regulate the use of their streets under powers delegated to them in the Vehicle and Traffic Law.
The case of People v. Grant (306 N. Y. 258) also holds that local authorities are authorized to enact various types of traffic ordinances as special local conditions may require, but not inconsistent with the Vehicle and Traffic Law. (Vehicle and Traffic Law, § 2002.)
The People v. Zanchelli case (8 Misc 2d 1069) held that a provision of the Vehicle and Traffic Law (then [1957] § 15, subd. 1) was unconstitutional for indefiniteness. “ A suitable muffler or device to prevent unnecessary noise ” was not definite enough to enable the ordinary member of society to know how to comply with the requirements thereof. I find no such ambiguity or indefiniteness in the Town of Oyster Bay Tow Car Ordinance. It is definite and concise, and to my mind, properly regulatory.
Section 12.0 of article XII states: “ It shall be unlawful for any person to drive along any street or bridge in the Town of Oyster Bay and solicit towing work. Solicitation of towing work by the operator or other occupant of a tow car while parked on any street or bridge is also prohibited.” (Italics mine.)
*610 It therefore becomes a question of fact as to whether the testimony in this case shows that the defendant by his actions and behavior at that time and place, was or was not soliciting. In my opinion, he was. In my opinion, the defendant heard about or followed the police car to the scene of the accident, that his excuse for being on that road was untrue, that he was there and refused to move from there because he was soliciting business, that he hoped that developments would enable him to tow the wrecked car away. There was no excitement at the scene, no disturbance, no injured persons to excite curiosity or interest, nothing but a wrecked car and police making a mandatory report of accident. So why did he stay and refuse to leave, even though he knew both he and the tow car were not properly licensed under the ordinance?
The first count of the information is accordingly dismissed. The defendant is found guilty of the third count, soliciting. There may be some question how the defendant could be guilty of “soliciting” and not be guilty of operating for “hire”. The distinction, as I see it, is this. Being a duly licensed New York State operator or chauffeur, he had a right to the use of the road with a duly registered New York State vehicle. Had he been hired or engaged in towing work, he would have been guilty of a violation of the ordinance. This he did not do, although, unquestionably he wanted to.
CONSTITUTIONALITY:
I find nothing in the Tow Car Ordinance of the Town of Oyster Bay which is unconstitutional, other than possibly the amount of the fine and the imprisonment penalty set forth in section 13.0 of article XIII entitled Penalties. In that section it states that a violation of this ordinance is an offense and under subdivision (b) of section 1800 of the Vehicle and Traffic Law of the State of New York the penalty set forth for such an offense would be a fine not more than $50 or imprisonment for no more than 15 days or both for the first conviction of such an infraction. Therefore, in the opinion of the court the setting of a maximum fine of $100 or imprisonment for not more than 6 months as set forth in that section and article of this ordinance would be violative of subdivision (b) of section 1800 of the Vehicle and Traffic Law.
It is clear that the Town Board has overstepped its authority in designating penalties greater than those spelled out in subdivision (b) of section 1800 of the Vehicle and Traffic Law.
The ordinance itself however, is not invalidated thereby since section 14.0 of article XIV provides for severability in the event *611 of a finding by the court that any clause, sentence, section, paragraph, or provision of the ordinance is invalid. This being so, the court may impose a penalty under subdivision (b) of section 1800 of the Vehicle and Traffic Law.
The defendant is found guilty on the third count and is fined $50.