Rudy MEYER et al.,
Plaintiffs-Appellants,

v.

ST. LOUIS COUNTY et al.,
Defendants-Respondents.

No. 39870.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 27, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 18, 1980.

Application to Transfer Denied
Sept. 9, 1980.

Koenigsdorf, Kusnetzky & Wyrsch, James R. Wyrsch, Richard H. Anton, Kansas City, David Lacks, Clayton, for plaintiffs-appellants.

Thomas Wehrle, County Counselor, George Lang, II, Asst. County Counselor, Clayton, for defendants-respondents.

KELLY, Chief Judge.

This is an appeal from a judgment of the Circuit Court of St. Louis County, Division Nine in an action for declaratory judgment and injunctive relief, seeking a declaration of invalidity of St. Louis County Revised Ordinance No. 7810 (1976). The challenged ordinance amended Title VIII, St. Louis County Revised Ordinances (1974) by enacting and adding thereto a new chapter, numbered 813, relating to the licensing and regulation of tow trucks. Plaintiffs-appellants, who are "owners" and "persons" who own, operate or possess tow truck vehicles as defined in the ordinance, sought a declaratory judgment and injunctive relief praying that the ordinance be declared void, and that the defendants be enjoined permanently from enforcing it. The defendants included St. Louis County, the County Supervisor, the Superintendent of Police, and the Director of Revenue of St. Louis County.

The ordinance consists of fifteen sections numbered 813.010 through 813.085. The first section denominates the ordinance the "Tow Truck Code." Section 813.010. The second defines the scope of the ordinance as applicable to "that part of St. Louis County outside of incorporated cities, towns, and villages." Section 813.015. Definitions of

terms used in the ordinance, such as "municipality," "tow truck," and "vehicle" are provided in § 813.020. Pursuant to §§ 813.025 and 813.030, an operator of a tow truck must obtain a license from the Director of Licenses, Department of Revenue, after providing certain information concerning the operator's identity and business, unless the operator is already licensed under a municipal ordinance similar to this one. The information given in the application will be referred to the Superintendent of Police for investigation, and the license shall be issued unless the applicant submits false or misleading information, has been convicted of certain crimes (although the Director may determine that the applicant's conduct subsequent to the conviction indicates fitness to operate a tow truck), or fails to pay the license fee; if the license is not issued an appeal procedure is made available to the applicant. Section 813.035. The license fee is $25.00, the term of the license is one year, and the renewal fee is $25.00. Sections 813.040, 813.045. Denial of a renewal application, suspension or revocation may occur if the Director finds false or misleading information in the application, if the applicant is found to have committed theft, to have possessed stolen property, or to have been involved in interstate transportation of stolen vehicles; notice and hearing are required in case of a suspension or revocation of a license already issued or if issuance of same is denied on initial application. Section 813.050. The license may not be transferred to another operator without the Director's approval. Tow trucks must be labeled, and approved rate schedules and authorization forms and statements must be carried in them and presented to the customer. Sections 813.060, 813.070. Operators towing under contract are exempt from the requirements of §§ 813.065 and 813.070, so long as the contract is carried in the tow truck. Section 813.075. Each applicant for a license must provide evidence of specified minimum insurance coverage. Section 813.080. Certain activities, such as "cruising," solicitation of customers, and use or possession of a short-wave receiver, are prohibited. Section 813.085. Violators of the ordinance are subject to fines up to $500.00 and imprisonment for not more than 30 days, or both. Section 813.090.

The trial court found the ordinance to be a valid, constitutional, and reasonable exercise of the police power granted to St. Louis County by Article VI, Section 18(c) of the Missouri Constitution. Plaintiffs appeal, raising six points of alleged trial court error.

When the cause came on for trial the plaintiffs-appellants presented the testimony of five witnesses.

Sergeant Edward J. Bright, Supervisor of the Crime Unit of the St. Louis County Police Department, testified that he had received reports and investigated complaints, one or two a month, of tow trucks being involved in the theft of automobiles. Some of these investigations were based upon eye-witness testimony of tow truck involvement, while some involved wrecked or disabled vehicles which could not have been removed under their own power. To this man's knowledge only one tow truck driver had been charged with theft of a vehicle, and that case was eventually prosecuted in St. Charles County. Some investigations were made by the police department into the problem, and the police department eventually requested the enactment of a regulatory ordinance by the St. Louis County Council. Sgt. Bright, a highly experienced police officer in the area of auto theft investigation, was of the opinion that the ordinance could be an effective measure in stopping auto thefts, although conceding that if drivers alone were responsible for the thefts, the ordinance would be less effective, since there is no regulation of drivers per se.

Norbert Heman, Director of the St. Louis County License Division, the agency charged with the supervision and enforcement of the tow truck ordinance, was offered as a witness by the appellants. He testified as follows. A fee of $25, which would be the amount collected under the ordinance, would not be sufficient to cover direct costs of operating the department

and the other expenses involved in processing the applications under the tow truck ordinance. The money from the collected fees goes to the General Fund of the County and is not specifically earmarked for any purpose. The budget for the Division of Licenses comes from the General Fund. While a schedule of prices for tow truck service would have to be filed with the Director, the Director would not have any authority to question those prices; his only determination would be to insure that the filed schedule, whatever it might be, was adhered to. Mr. Heman was of the view that the State disclosure law pertaining to public records would require him to have these price schedules open and available to the public, but that essentially this question would be a legal one. In response to the hypothetical question of counsel that as many as 1,000 tow trucks would be required to secure licenses, and that therefore $25,000 would be generated, this sum would probably exceed the costs of the Division of Licenses in its administration of the ordinance but that there were other administrative expenses that might not be covered.

Larry Asher, one of the appellants, testified that he operates a service station and tow truck business with six tow trucks in Kirkwood, Missouri. His operation includes Missouri, Illinois, and other states, about 25% of the operation going between states, and that he also operates on Interstate Highways in the unincorporated areas of St. Louis County. Mr. Asher does not own, but leases his tow trucks. The tow trucks are equipped with short-wave transceivers, but these are not presently designed to monitor police calls. The cost to his operation of compliance with the St. Louis County Ordinance would approximate $200 to $300 per truck. He specified the aforementioned license fee, new lettering, and the forms required by the ordinance, as specific elements of cost.

Stephen G. Bogin, President of Atlas Towing Company, also testified that he operates eleven tow trucks. The trucks are equipped with F.C.C. licensed receivers, and the tariffs and rates have been approved by the Interstate Commerce Commission. The I.C.C. has granted Atlas Towing authority to operate throughout the United States, and they are also licensed by the Missouri Public Service Commission. About 50% of the Atlas business is between states, and 75% on interstate highways. To Mr. Bogin's knowledge, illegal tow truck operations involve much less than 1% of the towing business. In order to comply with the St. Louis County ordinance, Atlas Towing would have to pay the fee, change the lettering and hire additional personnel, based upon the assumption that the owner or driver of the vehicle would not be present when the tow truck arrived. Assuming a driver or owner would be present when the tow truck arrived on the scene of the tow job, the additional cost due to this factor would be reduced. Atlas Towing currently is licensed under a City of St. Louis tow truck license, but is not in compliance with all of its provisions. Atlas' tow trucks are equipped with two-way radios, but not scanners, and Mr. Bogin testified that he does not monitor police calls and respond without specific requests from police departments.

Mr. Harold R. Thompson, one of the appellants, testified that he operates a Standard Oil Service Station and wrecker service on Interstate Highway 44, near Fenton, Missouri. Mr. Thompson does a good deal of business in the unincorporated area of St. Louis County. He also operates in the State of Illinois, and on Interstate Highways. His trucks are equipped with two-way radios, licensed by the F.C.C. He owns a scanner, but only responds to specific requests for his station's service. The scanner could be mounted in the trucks, and the trucks could then respond to an accident scene by means of such monitored call, but Mr. Thompson stated that he did not engage in such practice.

Findings of Fact, Conclusions of Law were made and filed by the trial court and judgment entered.

Appellants' first Point that the trial court erred in concluding that the ordinance is in conformity with the St. Louis County Char-

ter because the county did not have the constitutional or statutory power to assess the "tax" since the occupation of tow truck operators is not one of those enumerated by the Constitution or Statute, is without merit and we so hold.

Appellants' position is that the ordinance in question is a taxing ordinance and it is void because it does not comply with §§ 66.320–66.330 RSMo. 1969, authorizing the collection of a license fee from owners of motor vehicles nor with the provisions of Article II § 2.180(5) of the St. Louis County Charter because said Charter section does not authorize the levying of a tax upon the occupation of "tow truck operators."

Respondent, on the other hand, contends that the ordinance was not enacted by reason of its taxing power, but, rather, as an exercise of its police powers.

The issue then revolves around the distinction between a license fee imposed under the police power of a Charter County of the first class and a tax imposed under the Charter for the purpose of raising revenue.

"Consistently, municipal police power to license as a mode of regulation is distinguished from municipal power to license for revenue." McQuillin, 9 Municipal Corporations, § 26.15, p. 29 (3d revised ed. 1978). A statute or ordinance which imposes a fee upon an applicant may be a regulatory enactment or a tax, depending upon the purposes and characteristics of the enactment.

■ The character of an enactment is determined by its "incidents, not by its description in the statute books." McQuillin, 9 Municipal Corporations, § 26.16, pp. 32–33 (3d revised ed. 1978), and cases cited therein.

■ The principal "incidents" to be considered in deciding whether an enactment is a revenue or a regulatory measure are: a stated or apparent regulatory purpose, the amount of the exaction, and the intended destination of the proceeds. If the amount of the exaction exceeds the costs of issuing the licenses, administering and regulating the Act, this indicates that the Act is a tax imposed for the purpose of raising revenue. If the proceeds of the fees are deposited in a general fund, this too is indicative that it is a tax for the purpose of creating revenue. On the other hand, if the amount of the fee is reasonably related to the expenses incurred by licensing and regulation, the exaction should not be found to be an imposition of a tax for the purpose of raising revenue. Further support for reaching the conclusion that the fee is based upon the police power rather than the taxing power of the municipal corporation rests upon a showing that the proceeds of the exaction will be contributed to a fund reserved for payment of costs and expenses incurred in the administration, regulation and licensing required by the enactment.

■ With respect to the "incidents" of the ordinance under scrutiny, appellants argue that the "only investigation or regulation occurs at the time the operator applies for a license," and they suggest that this indicates a non-regulatory purpose. They also emphasize the fact that the revenue generated by the license fee is to be paid into a general account. Respondents admit the latter.

Appellants' argument on this point is not persuasive. First the ordinance contemplates extensive regulation, both at the time of application for a license and subsequent to the application. The initial investigation of the application may be supplemented by subsequent investigations initiated by consumer complaints, or by police officers charged with the enforcement of the ordinance. The regulatory scheme is pervasive, governing the identification of the trucks, the rates charged, the form and contents of the contracts used, and the activities of the operators, e. g. the ban on solicitation. The ordinance also imposes record-keeping requirements, affecting the contents of operators' records and the length of time that they must be kept. It must be concluded that the ordinance is regulatory in purpose, based on an examination of the regulatory scheme it establishes.

This conclusion is not defeated by an inquiry into the amount of the assessment and the destination of the funds collected. While, as we have noted hereinabove, one indicia that a fee is in fact a revenue measure is the payment of the fee into a general fund, other "incidents" which identify this ordinance as a regulatory enactment far outweigh a finding that we are here dealing with a revenue measure.

The uncontradicted evidence in the record before us shows that the cost of investigating a license application for the operation of a tow truck, together with the issuance of the license equals approximately $35.00 to $40.00 per license; an amount in excess of the licensing fee. It would be illogical to find, under these facts, that the fee in this case was intended to produce revenue and that the ordinance was imposed under the taxing power.

We conclude, therefore, that Ordinance No. 7810 S.L.C.R.O. enacting Chapter 813 relating to the licensing and regulation of tow trucks in the unincorporated area of St. Louis County is not a taxing measure but is a regulatory measure for the benefit of the general health and welfare of the citizens of St. Louis County pursuant to the police powers granted to St. Louis County by Art. VI, Sec. 18(c) of the Constitution of the State of Missouri, 1945.

Appellants also contend that the trial court erred in concluding that the ordinance is valid because it is not a reasonable exercise of the police power of the County. They argue that the ordinance (1) is not necessary for the protection of the public health and welfare, (2) it does not accomplish its purported goals, and (3) it creates unreasonable classifications.

Appellants bear the burden of proof on this issue, and it is their duty to introduce evidence to prove their contentions in this respect.

"(T)he police power is one to be exercised within wide limits of legislative discretion and if [an ordinance] appears to be within the apparent scope of this power, the courts will neither inquire into the wisdom of the grant of power nor substitute its discretion for that of the legislature." *Easy Living Mobile Manor, Inc. v. Eureka Fire Protection District,* 513 S.W.2d 736, 738[5] (Mo. App.1974). Appellants rely on *Wyatt v. Ashbrook,* 154 Mo. 375, 55 S.W. 627 (1900) for the proposition that the court must strike down an act of the legislature if the court cannot discern some public benefit or protection deriving from the act. However, a closer reading of *Wyatt* shows it to be inapposite. The court there said it must look to the object of the act "(i)n order to sustain *legislation of the character of the act* in question as a police measure" (emphasis supplied) 55 S.W. at p. 629. The court said of the act in question, "(i)t shows upon its face that regulation is not its purpose, but that revenue, or undue restriction in the interest of others, not embraced in the class designated, is the aim in view." 55 S.W. at p. 629. *Wyatt* stands for the proposition that an act which appears irregular on its face must be supported by evidence of its effectiveness in furthering the general welfare. It does not control here because the ordinance challenged herein is not patently improper. This ordinance, Chapter 813, has the promotion of the general welfare as its apparent objective. Its provisions deal with the investigation of applicants for licenses, various identification procedures for towing vehicles, rate disclosures, and restrictions on soliciting and cruising. See 813.030, 813.035 (investigation); 813.060 (identification); 813.065, 813.070 (disclosure); 813.085 (soliciting and cruising). These provisions are apparently intended to protect consumers from illegitimate operators, and to promote traffic safety. These objectives are clearly and closely related to the public health, safety and welfare.

Appellants would have this court review the evidence to determine if it would support the ordinance as a police measure. Such a review would be a clear imposition on legislative discretion. The trial court did not err in refusing to second-guess the legislature concerning the wisdom of its enactment.

Appellants next direct their attack against the ordinance to what they contend is the creation of unreasonable classifications whereby certain classes of tow truck operators—i. e. those under contract with the police department or under contract with another entity or licensed by another municipality whose ordinance is similar to Chapter 813—are exempted from the licensing requirements of Chapter 813.

The ordinance exempts from its licensing requirements any person operating a tow truck which has affixed to its windshield a valid license obtained from any municipality pursuant to an ordinance of said municipality which is similar in content to Chapter 813, § 813.025(b).

By § 813.075 any licensee operating a tow truck under the terms of Chapter 813 and who is doing so under a written contract for a specific period of time with any person, firm or corporation to tow, transport, convey or move a vehicle owned or controlled by such person, firm or corporation to a specific location so designated, and for a consideration set forth in the contract, is exempted from the provisions of §§ 813.065 and 813.070 relative to schedule of prices, presentation of certain documents enumerated in the ordinance to a customer and the retention of same provided they have the written contract in their possession and comply with the other requirements of the ordinance.

We conclude that these exemptions are reasonable when viewed in light of what we deduce are the objectives of §§ 813.065 and 813.075. Tow truck operators are required by these two sections of the ordinance to disclose to prospective customers the rate schedule and to comply with specified authorization formalities before and after completing the tow. In those cases where the customer is the owner or the operator of a disabled vehicle, he is not in an advantageous position to negotiate with the tow truck operator the charge for the services to be rendered by reason of the emergency conditions which have made the services of the tow truck operator a necessity; it is this position of bargaining power the sections of the ordinance are aimed to equalize. On the other hand, where the customer is the contractor the necessity for these protections is less evident and the circumstances under which the bargain is struck are free from the stress normally associated with emergency conditions. In the case of contract towing a rate schedule such as required by the ordinance would be irrelevant inasmuch as contract price arrived at after negotiations between the parties would be founded upon factors other than the rate for a single, one time tow. In requiring that the contract be carried at all times by the tow truck operator the ordinance maintains its identification requirements inasmuch as it takes the place of the standard authorization forms required of other tow truck operators.

We hold that the exemption of tow truck operators who perform their services on the basis of contract is reasonable in view of the fact that said operators are subject to the remaining Chapter 813 provisions.

The ordinance also creates an exemption for operators licensed by other municipalities under ordinances "similar in content" to Chapter 813, § 813.025(b). Appellants assert that this provision "renders the entire regulatory scheme essentially useless and places a ridiculous burden on County law enforcement personnel."

Appellants appear to argue that the exemption is unreasonable because the police officers would be required to determine the existence and validity of a license from another municipality, and the similarity of that municipality's ordinance to Chapter 813, which would render enforcement impossible. This argument is not persuasive. The issue here is the reasonableness of the exemption. The ordinance does not specify the methods to be employed for the determination of compliance or lack of it. Whether law enforcement authorities adopt an efficient or a cumbersome method of ascertaining whether a tow truck operator enjoys this exemption is not before this court. The question here is whether or not the exemption is an unreasonable classification, and we conclude that it is not unrea-

sonable. The objectives of the ordinance are satisfied if a tow truck operator, not licensed pursuant to the requirements of Chapter 813, is licensed pursuant to the provisions of a similar enactment. The exemption is reasonably related to the purposes and objectives of Chapter 813, and therefore cannot be stricken as an unreasonable classification.

Appellants have raised in this Point Relied On the question whether the ordinance is necessary for the protection of the public health, safety, morals and welfare. They concede that there are situations where courts have upheld ordinances regulating tow trucks where there is evidence of severe abuses whereby problems were created which required some regulation to afford protection to the public, e. g. where several tow trucks would appear at the scene of accidents and altercations between the operators of the tow trucks ensued to determine who would get the tow. Such evidence was absent here the appellants contend.

█ We would initially note that this ordinance enters the arena armed with a presumption that it is a valid and reasonable legislative enactment and the burden of demonstrating that it is an invalid or unreasonable exercise of the police powers of the respondents rests upon the appellants. *Home Builders Ass'n of Greater Kansas City v. City of Kansas City*, 555 S.W.2d 832, 835[4] (Mo. banc 1977); *Bellerive Inv. Co. v. Kansas City*, 13 S.W.2d 628, 639[18] (Mo. 1929). The determination of the wisdom of a legislative enactment is not a matter for the courts to examine, nor may a court substitute its discretion for that of the members of the legislative body which enacted the ordinance. *Easy Living Mobile Manor, Inc. v. Eureka Fire Protection District*, 513 S.W.2d 736, 738[5] (Mo.App.1974).

█ We hold that the appellants failed to overcome the presumption of validity and reasonableness of the ordinance and that the trial court did not err in its holding that the ordinance was a valid and reasonable exercise of the police powers of St. Louis County. There is no merit to this Point.

█ The next Point Relied On is that the trial court erred in concluding that the ordinance is not in conflict with prior state legislation on three grounds: (1) the disposition of funds generated by motor vehicle registration fees; (2) the permission to operate as a motor carrier granted by the Missouri Public Service Commission; and (3) the insurance and bonding requirements of the Motor Vehicle Safety Responsibility Law, § 303.010 et seq. V.A.M.S.

The thrust of appellants' argument is that the ordinance is in direct conflict with Art. X, § 12(a) of the Constitution of Missouri, 1945, requiring that "additional" taxes levied must be used for road and bridge purposes whereas the licensing fee is paid into the general revenue of St. Louis County and is not used for roads and highways.

Inasmuch as we have already determined that this ordinance is not a tax, there is no merit to this argument of appellants.

█ Appellants' contention that the licensing requirement of the ordinance conflicts with the permission to operate as a motor carrier granted by the Missouri Public Service Commission also lacks merit.

The basis for this contention is a permit issued by the Missouri Public Service Commission to the Atlas Towing Company, one of the appellants, on the 26th day of February, 1976, "to operate as a motor carrier over the highways of this State, exclusively in interstate commerce, in the transportation of commodities as authorized by the Interstate Commerce Commission under Docket No. MC 140595 and subs thereunder."

However, as respondents point out in their brief, ever since September 28, 1971, the effective date of Senate Bill 253, "Motor vehicles commonly known as tow trucks or wreckers, designed and exclusively used in the business of towing or otherwise rendering assistance to abandoned, disabled or wrecked vehicles" have been exempted from regulation by the Public Service Commission. Section 390.030 RSMo. 1969, amended, Laws 1971, p. 419.

There cannot, therefore, be any conflict.

Appellants final contention under this Point is that the amounts of the liability insurance or bond which must be obtained by an operator of a tow truck before a license to operate same may be issued exceed those required by the Motor Vehicle Safety Responsibility Law of Missouri, Ch. 303 RSMo. 1969, and therefore are in conflict with said law.

Section 813.080, as amended, requires the following coverage: $25,000.00 per person and $50,000.00 per accident for personal injuries and $10,000.00 property damages, whereas § 303.030 RSMo. 1969, requires an insurance policy or bond of not less than $10,000.00 and $20,000.00 for bodily injury and $2,000.00 for property damage. Other less onerous requirements under the Motor Vehicle Safety Responsibility Act, which we need not detail here, are that proof of financial responsibility is not a prerequisite to the issuance of licenses and only comes into play after an operator of a motor vehicle has been involved in an accident. Moreover, there are four methods whereby the operator or owner of the motor vehicle may satisfy the requirement of demonstrating financial responsibility following a motor vehicle accident. Section 303.160.1 RSMo. 1969.

■ The Motor Vehicle Safety Responsibility Law of this state does not preempt the field. It does not apply to or affect policies of automobile insurance against liability required by any other law of the state, § 303.340 RSMo. 1969, nor does it apply with respect to any motor vehicle owned by governmental agencies nor to any common carrier or contract carrier whose operations are subject to the jurisdiction of and are regulated by the interstate commerce commission or the public service commission of Missouri, or by regulatory ordinances of the municipalities served by such common or contract carrier, and which shall have satisfied any applicable requirements concerning bond, insurance or proof of financial responsibility imposed by the regulatory authority having jurisdiction over the carrier's operation. § 303.350 RSMo. 1965.

Appellants concede that there is authority for the licensing of tow trucks by municipalities found in the decisions of appellate courts of other jurisdictions. Anno. Regulation of vehicle wreckers or towing service business, 42 A.L.R.2d 1208; *Michigan Towing Associates, Inc. v. City of Detroit*, 370 Mich. 440, 122 N.W.2d 709 (1963); *Librizzi v. Plunkett*, 126 N.J.L. 17, 16 A.2d 280, 282[3] (1940); *Richard's Service Station, Inc. v. Town of Huntington*, 79 Misc.2d 834, 361 N.Y.S.2d 497, 504[2] mod. 47 App.Div.2d 963, 367 N.Y.S.2d 296 (1975); *Hempstead T. W. Corp. v. Town of Hempstead*, 13 Misc.2d 1054, 177 N.Y.S.2d 445, aff'd 7 A.D. 637, 179 N.Y.S.2d 848 (1958); *City of Chattanooga v. Fanburg*, 196 Tenn. 226, 265 S.W.2d 15, 42 A.L.R.2d 1200 (1954); and *People v. Francis*, 53 Misc.2d 606, 270 N.Y.S.2d 483 (D.C. Nassau County, 1967).

Nevertheless, they would distinguish those cases on the grounds that the evidence in each case proved clearly that the regulation of the tow truck business was necessary "to protect the motoring public from abuses prevalent in the municipalities enacting the ordinance."

■ The difficulty with appellants' argument on this question is that as a charter county, St. Louis County is endowed with some of the powers and functions of a municipal corporation in the area outside incorporated cities and is empowered to exercise legislative power pertaining to public health, police and traffic, building construction, and planning and zoning in such area. Art. VI, Sec. 18(c), Constitution of Missouri, 1945. Ordinances enacted by the County Council of St. Louis County therefore enjoy a presumption of constitutionality and reasonableness. We have already ruled that the trial court did not err in deciding that the appellants had failed to overcome this presumption.

■ Furthermore, we find no conflict between the insurance requirements of the ordinance, and the Motor Vehicle Safety Responsibility Law.

St. Louis County, under its police powers, had the authority to enact regulation of the

tow truck business by requiring those who would engage in the operation of said business to obtain a license. Art. 6, Sec. 18(c), Constitution of Missouri, 1945. It also had the authority to require the furnishing of a policy of liability insurance or a bond in the amounts stated hereinabove prior to the issuance of a license to operate a tow truck business in the unincorporated areas of St. Louis County without coming into conflict with the State Motor Vehicle Safety Responsibility Law, Ch. 303 RSMo. 1969.

We hold that there is no merit in this Point.

Appellants' next Point is that the trial court erred in its conclusion that the ordinance is not in violation of the commerce clause of the United States Constitution because it constitutes an improper burden upon interstate commerce in that it could effectively prevent an operator engaged solely in interstate commerce from operating within the unincorporated areas of St. Louis County.

From the evidence we deduce that some of the appellants engage in the towing business on interstate highways and only one, Atlas Towing Co., possesses a certificate of convenience and necessity from the Interstate Commerce Commission to operate a towing business in interstate commerce. Nevertheless, Atlas Towing Co. is a Missouri corporation whose main office is situated in St. Louis County at 1353 Pennsylvania Avenue, Pagedale, Missouri. Approximately 50% of its business in interstate towing and 75% of it on interstate highways within the State of Missouri.

Initially, we are of the opinion that the towing of disabled or abandoned motor vehicles on interstate highways wholly within the boundaries of the State of Missouri does not constitute an engagement in interstate commerce. "Interstate commerce" refers to "interstate business." *Mayor and Board of Aldermen of City of Vicksburg v. Streckfus Steamers*, 167 Miss. 856, 150 So. 215, 218 (1933).

Further, the certificate of convenience and necessity issued by the Inter-

state Commerce Commission to Atlas Towing Co. specifically identified the service it could perform in interstate or foreign commerce on "irregular routes," as follows: "(1) Damaged, wrecked, or disabled motor vehicles, in truckaway service, and (2) replacement vehicles for damaged, wrecked or disabled vehicles between St. Louis, Mo., on the one hand, and, on the other, points in Illinois." It did not authorize Atlas Towing Co. to tow vehicles in interstate commerce in St. Louis County, Missouri.

Two other tow truck operators testified that their operations also involved towing vehicles between states. One testified approximately 25% of his business involved interstate tows; another, 10%.

There is a line of decisions of the United States Supreme Court which have upheld the authority of state and local governments to enact non-discriminatory regulatory measures which do not create a burden on interstate commerce. *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852, 78 A.L.R.2d 1294 (1960) (a smoke abatement ordinance); *Maurer v. Hamilton*, 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969 (1940) (truck regulations); *South Carolina State Highway Department v. Barnwell Bros., Inc.*, 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734 (1937) (length and weight limitations of motor trailers); *Kelly v. State of Washington ex rel. Foss Co.*, 302 U.S. 1, 58 S.Ct. 87, 82 L.Ed. 3 (1937) (inspection of hull and machinery of motor driven tugs on navigable waters of United States); *Sprolis v. Binford*, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167 (1932) (size and weight regulations of trucks).

The cases cited by appellants are inapposite.

Our Supreme Court in *Campbell Sixty-Six Express, Inc. v. Dalton*, 378 S.W.2d 558, 561–562[4] (1964), held that a vehicle engaging in intrastate commerce may be subject to licensing requirements even though it is also engaged in interstate commerce.

Appellants have utterly failed to demonstrate how they are injured as a result of the impact of the ordinance on their inter-

state business. Rather, we conclude that the ordinance does not affect appellants' interstate tow truck business. Only those engaged in the tow truck business who engage in no local business but only pass through St. Louis County in the conduct of their tow truck business could suffer a burden on interstate commerce should St. Louis County attempt to require that they obtain a license before they could proceed through the unincorporated area of said county. None of these appellants fit into that category.

We rule this Point against appellants.

■ Appellants also contend that the trial court erred in its conclusion that the ordinance does not violate the due process clause of the United States and Missouri Constitutions because it is vague, provides too much discretion to public officials and interferes with freedom of speech and freedom of association in that (A) several important words and phrases in the ordinance lack definition and are subject to conflicting interpretations, (B) some provisions of the ordinance are so vague as to provide government officials with unlawful discretion regarding enforcement, and (C) some provisions of the ordinance unlawfully interfere with freedom of association and constitute unlawful prior restraints on speech.

■ This Point Relied On does not meet the prerequisites of Rule 84.04(d) and preserves nothing for this court to review. It contains only a series of abstract statements of law and to comprehend what it attempts to preserve for review would require us to resort to the argument portion of appellants' brief. A party's point which cannot be comprehended without reference to the argument results in nothing being preserved for review. *State v. Drake*, 514 S.W.2d 653, 655[2] (Mo.App.1974).

For these reasons we do not reach this Point.

■ Appellants' final Point is that the trial court erred in its order that the appropriate county officials may proceed with the enforcement of the ordinance but the appel-

lants who currently operate towing businesses are exempt from the ordinance in that it contains an implied dispensation to going businesses.

The authority appellants rely on for this contention is *State ex rel. Safety Ambulance Service, Inc. v. Kinder*, 557 S.W.2d 242 (Mo. banc 1977), and the "implied grandfather provision" doctrine enunciated therein.

*Kinder* involved the interpretation of the Missouri ambulance licensing law §§ 190.-100 through 190.195 RSMo. 1975, Supp., in light of the question whether that Act implicitly permitted the issuance of licenses to those ambulance operators in business prior to the effective date of the Act, without a hearing to determine the "public convenience and necessity."

In arriving at its holding that a "grandfather" provision was implied, the Supreme Court reviewed the terms of the various sections of the Act, the frequent appearance of the word "proposed" therein, and the effect of the lack of a "grandfather" provision would have on ambulance service in the state if each time an annual license came up for renewal it became necessary to conduct a hearing on the question of whether the license should be renewed should someone oppose renewal on the grounds there was no longer any need for the services of that licensee.

Appellants argue that the same grounds upon which the Supreme Court found an implied "grandfather" clause in the *Kinder* case are present here.

In *Kinder*, the court took note of the frequent use of the word "proposed" with respect to (1) the applicant for a license to operate an ambulance business; (2) and the finding of the "license officer" after hearing "that the public convenience and necessity require the *proposed* ambulance service." From this the *Kinder* court concluded, 557 S.W.2d, l.c. 245: "The use of the term *proposed* in both subsections indicates such hearings and findings are required only as to prospective ambulance businesses not then in service."

Appellants point out that the same term, "proposed," as employed in § 813.305(a) and (b), is persuasive that in the tow truck licensing ordinance of St. Louis County there must be an implied "grandfather" provision and that the County Council of St. Louis County intended that the licensing provisions of the ordinance be applicable to the operators of the tow truck business on or after the effective date of the ordinance.

Appellants also argue that if the ordinance is not interpreted so as to grandfather those operators of tow truck businesses engaged in said business on and before the effective date of the ordinance, by the very terms of § 813.025, no tow trucks would be operating for the benefit of the general public until such time as their operators obtained licenses.

Appellants point out that if every tow truck operator in St. Louis County must make application for, and be granted a license before he can operate—and no tow truck operator doing business when the Act took effect could have had the license required by said enactment—the impact of the number of applications on the office of the Director of Licenses and the Superintendent of Police would have made it impossible for these public officials to comply with the administrative duties of the ordinance imposed on their respective offices within the time frame set out the in.

This argument has reference to the requirement that anyone desiring to engage in the tow truck business make application to the Director, whereupon the matter is referred to the Superintendent of Police who shall investigate the character and fitness of the "proposed applicant" and other persons interested in the "proposed license." Section 813.035(a). Within 60 days of the filing of the application the Superintendent must file a written report concerning the investigation of the applicant and any other person interested in the proposed license. It is only after this duty of the Superintendent has been performed, and the applicant and other persons, if any, interested in the license are reported to be of good character and fit to be licensed, that the Di-

rector may issue a license to engage in the tow truck business. In the absence of some provision that operators of tow trucks engaged in said business on or prior to the effective date of the ordinance might continue to operate until such time as this application for licensing could be processed, it would appear that except for those tow truck operators exempted from the licensing provisions of the ordinance, all tow truck operators would be forced to close down their businesses and disengage their tow truck operations. How many tow trucks would be available to assist persons in need of their services in the interim was not shown at trial.

We do not believe the St. Louis County Council intended this result; nor do we conclude that it intended, during the period when only those tow truck operators who came within the exemption could continue to operate their businesses, should enjoy a monopoly on the business in the unincorporated areas of St. Louis County.

The purpose for enactment of the ordinance was to prevent the alleged practices of some tow truck operators, i. e. involvement in the theft of automobiles, congestion at the scene of traffic accidents and unregulated solicitation of business by tow trucks "cruising," i. e. "operating a 'tow truck' on a public highway at a slow rate of speed or in any other fashion for the purpose of soliciting business along said highway," and to protect the public against price-gouging in connection with the towing and storage of vehicles.

The only tow truck operators exempt from the licensing requirement of the ordinance are those operators who have obtained an operator's license from "any municipality" having an ordinance "similar in content" to Ch. 813.

The Director is mandated to issue a license to an applicant unless one or more of three grounds for not issuing same are found. If the applicant makes any "intentional misstatements or misleading statements of fact" in the application a license shall not be issued. If any parties interested in the proposed operation of a tow truck

have been (1) convicted of any theft, possession of stolen property, or interstate transportation of stolen vehicles or (2) have previously had a business license suspended or revoked no license shall issue to them unless the Director of Licenses finds that the conduct of such party or parties subsequent to said conviction, suspension or revocation has been such as to indicate fitness to operate a tow truck and that permitting the applicant to conduct the operation would not be contrary to the public interest. The only other grounds upon which the Director may refuse to issue a license to the applicant is failure to pay the required license fee. Section 813.035(b).

There is no test directed at any particular expertise required with respect to the operation of a tow truck nor are there any equipment requirements specified in the ordinance as a prerequisite to the issuance of the license.

To protect the motoring public against price gouging the owner of a tow truck is required to file with the Director a schedule of prices to be charged for the towing and storage of vehicles based on time, mileage or a combination of both and the minimum charge for same except when the licensee is under a written contract for a specific period of time with any person, firm or corporation to tow, transport, convey or move a vehicle owned or controlled by such person, firm or corporation to a specific location for a consideration stated in the contract. Prior to undertaking a tow the licensee or his agent is required to present, on a special printed form approved by the Director, the schedule of prices aforesaid and have the customer sign an authorization for the towing of the vehicle. It is unlawful for an operator of a tow truck to charge a sum in excess of that authorized by the schedule filed with the Director. Section 813.065.

As we read the ordinance which was adopted by the St. Louis County Council on April 15, 1976, approved by the County Supervisor on April 20, 1976, and, pursuant to Art. 2, § 2.120 of the County Charter, became effective on May 5, 1976, no person, other than those exempted from its licensing requirements by § 813.025(b), 1974,

could, on and after midnight of May 4, 1976, lawfully operate a tow truck within St. Louis County unless he had obtained the license required thereby and should have affixed same to the lower left hand corner of the windshield of the tow truck for which the license had been obtained.

However, to obtain this license there are a number of preliminary tasks to be performed by the applicant for the license required by the ordinance which cause us to conclude that an implied "grandfather clause" was intended.

Initially the person desirous of operating a tow truck in St. Louis County, who was not exempt from the licensing requirements of the ordinance, had to do the following: (1) make application to the Director for the issuance of a license on a form furnished by the Director; (2) pay the filing fee of $25.00 for each tow truck he intended to operate at the time he made application for the license; and, (3) obtain a policy of insurance or an indemnity bond, acceptable to the Director in the amounts specified in the ordinance for bodily injury and property damage liability in Section 813.080. After the applicant had filed his application for licensing, the Director had to then refer the application to the Superintendent of Police who is directed by the ordinance to investigate the character and fitness of the applicant and any other persons listed as having an interest in the proposed license and file a written report concerning the applicant with the Director, together with a recommendation for the issuance or denial of the license within 60 days.

If these preliminaries were observed, it is apparent that for some period of time after the effective date of the ordinance, May 5, 1976, St. Louis County would have available to it for the purpose of towing disabled or abandoned vehicles, only those tow trucks whose operators had been licensed by one of the municipalities in St. Louis County pursuant to an ordinance similar to Ch. 813. There is no evidence in this record which municipalities in St. Louis County or adjoining counties have similar ordinances nor how many tow truck operators possess licenses issued under such municipal ordinances so that they could fill the temporary

void in the availability of tow trucks in St. Louis County until the preliminary steps for licensing could be carried out after the ordinance took effect.

We cannot believe that the County Council intended this result.

Respondents have recognized this problem and in their brief state: "The Court may find that a grace period of 90 days, for example, would give ample time to comply by present tow truck operators." If the County Council had intended to assure that owners and operators of disabled vehicles should have tow truck service available to them by those presently engaged in the business until such time as they could apply for and obtain licenses it could have so provided. It did not; rather, it made it unlawful for anyone to operate a tow truck within the County without a license and must have known that the law became effective within 15 days after it was signed and approved by the County Supervisor as the Charter provides, and that it was impractical for licenses to be issued within so short a period of time.

They also argue that the object and evil sought to be remedied by the County Council would not be achieved if applied only against new businesses while allowing those businesses whose operation made enactment of the ordinance reasonably necessary to continue to operate.

In making this argument it is apparent that respondents misconceive the effect of the "grandfather clause." Under the implied grandfather clause those presently operating tow trucks in the unincorporated areas of St. Louis County shall, nevertheless, be required to comply with each provision of the ordinance requiring any action by the applicant. When this has been accomplished, the Director shall issue a license to the applicant without referring the application to the Superintendent of Police for investigation as required by § 813.035.

Once licensed, the tow truck operator will be brought under the control of the ordinance and his operation shall be subject to an annual review by the Director when he must apply for a renewal of his license. If his operation is not in compliance with the ordinance his license may be suspended, revoked or not renewed.

We affirm the judgment of the trial court in all respects except we reverse that part of the judgment authorizing the defendants to proceed with the enforcement of the ordinance as to tow truck operators who were engaged in the tow truck business in St. Louis County on or before May 4, 1976, and who are the beneficiaries of the "grandfather clause" we have found to be implied in said ordinance provided said tow truck operators, aforesaid, make application for and comply with those provisions which are required to be performed by an applicant for a license under the ordinance but without the necessity of a favorable recommendation of the Superintendent of Police required by § 813.035.

We remand the cause to the Circuit Court of St. Louis County with directions to amend the Judgment and Decree heretofore entered to conform to the decision herein reached.

STEPHAN, P. J., and STEWART, J., concur.