Norman KUNZ et al.,
Plaintiffs-Appellants,

v.

CITY OF ST. LOUIS et al.,
Defendants-Respondents.

No. 39873.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 27, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 18, 1980.

Application to Transfer Denied
Sept. 9, 1980.

James R. Wyrsch, Richard H. Anton, Kansas City, for plaintiffs-appellants.

Jack L. Koehr, City Counselor, Judith A. Ronzio, Asst. City Counselor, St. Louis, for defendants-respondents.

KELLY, Chief Judge.

Norman Kunz and nine other persons and corporations who reside in and do business as operators of wreckers in the City of St. Louis, and are subject to the licensing provisions of Ordinance No. 51288 of the Revised Code of the City of St. Louis, instituted this cause by filing a Petition for Declaratory Judgment and Injunction in the Circuit Court of the City of St. Louis, against the respondents, the City of St. Louis, the "Register" of the City of St. Louis, the Chief of Police of the City of St. Louis, and the License Collector of the City of St. Louis, seeking a declaration that Ordinance No. 51288 of the City of St. Louis was void and of no effect and an order enjoining the respondents from enforcing it.

The trial court entered judgment that the ordinance was a valid enactment and dissolved the temporary restraining order enjoining the respondents from enforcing the ordinance it had previously ordered on January 13, 1977. Appellants have appealed this judgment of the trial court.

On appeal five grounds for reversal of the trial court's judgment are raised. Finding no merit to any of these grounds, we affirm.[1]

On April 9, 1962, the City of St. Louis adopted Ordinance No. 51288 whereby Chapter 664 of the Revised Code of St. Louis, relating to the licensing and regulation of wreckers or tow trucks was enacted. By § 664.020 [2] the ordinance made it unlawful for any person to operate a "wrecker"

---

1. We have reviewed and decided this date, a companion case, *Meyer, et al. v. St. Louis County, et al.*, # 39870, and have held a similar St. Louis County towing ordinance valid against the same attacks lodged against the ordinance of the City of St. Louis.

2. Hereinafter all citations of St. Louis Ordinances refer to the Revised Code of the City of St. Louis, 1914, as amended, unless otherwise stated.

within the City unless that person had obtained a license from the License Collector. A "wrecker" is defined in the ordinance as a "mechanically propelled vehicle equipped with a boom and winch, used to hoist and tow, transport, convey or move a disabled motor vehicle from a place of disability to a place of designation . . ." Section 664.010(f).

For a person to obtain the license required by the ordinance he had to make application to the License Collector on a form furnished by the License Collector which must contain specific information including, among other information, the place from which the wrecker will operate and the number of such vehicles to be operated, a description of each wrecker and its serial and motor number, sworn to by the applicant. Section 664.030. Prior to issuing a license the Collector is required to cause an investigation to be made to ascertain if the applicant is a person of good moral character and to determine whether the vehicle is in such condition that it can be operated in a safe manner. No license shall be issued unless the applicant or all officers, partners, and managers of applicant are persons of good moral character, and unless any vehicle licensed is in good operating condition. Section 664.040.

The fee for the license is $25.00 for each vehicle annually, renewable on or prior to January 1, of each calendar year. Section 664.050. No license could be transferred from one owner to another, but an owner could, with approval of the License Collector, transfer a license from one wrecker to another wrecker. The License Collector has the power to suspend or revoke a license, after written notice and hearing, if a licensee violates the ordinance, if a licensee operates his wrecker while the license is under suspension, or if there was any material misrepresentation in the application for a license. Upon revocation, the holder of the license can have the decision of the License Collector reviewed by the Circuit Court under the Administrative Review Act, Ch. 536.100 V.A.M.S. Section 664.060(b), (c), (d), (e), and (f).

Before a license to operate a wrecker can be issued the applicant is required to furnish a policy of insurance or an indemnity bond acceptable to the License Collector, insuring the wrecker operation with limits for bodily injury liability of at least $20,000.00 for each person, $50,000.00 for each accident, and property damage liability of $10,000.00 for each accident. Section 664.100(a). The owner is also required to prepare and file, in triplicate, with the License Collector, a schedule of maximum prices to be charged for the towing and storage of disabled vehicles, and the schedule may also include the minimum charge for any undertaking involving towing and storage. The schedule may be based on time, mileage or a combination of both. If a license is issued, one copy of this schedule is retained by the License Collector, one copy shall be returned to the applicant, and the third copy is to be forwarded to the Police Department. Section 664.080(a).

The license, once issued, must be affixed to the windshield of the wrecker for which it is issued, § 664.020, and the owner is required to label each wrecker with specified lettering by which the name and address of the licensee, the fact that it is licensed by the City and that anyone with whom the wrecker driver might have occasion to do business should request the schedule of prices filed with the police department prior to engaging the vehicle. Section 664.070.

Prior to undertaking a job the licensee or his agent is required to present to the customer a form, in duplicate, containing the schedule previously filed with the License Collector, which shall serve a two-fold purpose. The form advises the customer of the basis of charges under which the job is to be done and also as an authority for the commencing of the tow as a work order. The customer's signature on this form is an acknowledgement that he has examined the schedule of prices and has authorized the towing of his vehicle; the original of this form is to be retained by the licensee for a period of six months, and the copy is to be delivered to the customer. Section 664.-

080(b) and (c). In addition to the information required by § 664.080(b), other information, including the full name and address of the licensee, the full name of the operator of the wrecker, etc. as required by § 664.080(c) is required to be incorporated in the form mandated by § 664.080(b). Section 664.090.

Exempted from the requirements of § 664.080 and 664.090 are: (1) licensees operating a wrecker under a written contract for a specific period of time with any person, firm or corporation to tow, transport, convey or move any disabled vehicle owned or controlled by such persons, firm or corporation to a specific location so designated for a consideration set forth in such contract provided the licensee has in his possession at all times while so engaged, the contract aforesaid, and (2) any wrecker engaged by the Police Department of the City of St. Louis in carrying out its police functions and duties. Sections 664.091 and 664.-110.

In addition to making it a violation of the ordinance to operate a wrecker without a license, § 664.020, the ordinance also made it a violation for an operator of a wrecker to: (1) engage in "cruising" (2) to invite or permit loitering within or near his wrecker, (3) to seek employment by repeatedly driving his vehicle to and fro in a short space on any highway, or to otherwise interfere with the proper and orderly progress of traffic along the public highway, (4) solicit or attempt to divert prospective patrons of another wrecker, (5) solicit or divert prospective patrons of a given garage in the City to any other garage, (6) solicit, demand or receive from any person any pay, commission or emolument whatever except the proper fare for transporting the disabled vehicle in accordance with the schedule of charges required by § 664.080, (7) proceed to the scene of a disabled motor vehicle without having been requested to do so by the owner or his authorized representative, (8) remove a motor vehicle involved in an accident in which a person has been killed or seriously injured unless such vehicle has been released by a duly authorized member of the Police Department, and (9) to use or have in the possession of the licensee or his agent, a short-wave radio receiver while engaged in the business as a wrecker, § 664.100. The ordinance also required operators of wreckers to promptly report all changes of address to the License Collector. Section 664.100(i).[3]

"Cruising" is defined as "operating a Wrecker to and fro on a public highway at a slow rate of speed or in any other fashion for the purpose of soliciting business along said public highway."

"Soliciting" is defined as consisting "of requesting or attempting to persuade an owner or someone on his behalf to give permission to a Wrecker to remove, repair, or store a disabled motor vehicle, for a consideration, without a previous request from the owner or someone on his behalf." Section 664.010(i)

According to the evidence this ordinance was amended by enactment of § 57218 which was approved on June 22, 1976. A new section, § 2(b) of this amendment provides:

"If and when it shall become lawful for city licensed wreckers to cross the city limits line and operate in the county and its municipalities, incorporated or unincorporated, in conformance with the county law regulating such traffic, then shall county licensed wreckers, conforming with the provision of ordinance 51288, as amended, be authorized to cross the city limits lines and operate in the city."

At trial the appellants offered the testimony of Sgt. Thomas J. Murphy, the Supervisor of the Auto Theft Section of the Metropolitan St. Louis Police Department, John E. Thompson, the Assistant Chief Deputy of the License Collector's office, Stephan Bogin, President of the Atlas Towing Company, Inc., Harold R. Thompson, a service station operator in Fenton, Missouri, and

---

**3.** Unlike the St. Louis County Ordinance considered in the *Meyer* case, the City of St. Louis Ordinance makes no provision for fine and imprisonment for violators of the ordinance. Section 813.090 S.L.C.R.O.

Michael V. Sherwood, past owner and treasurer of the Convent Garden Towing Service, a corporation, which operates a service station and towing service in the City of St. Louis.

The thrust of Sgt. Murphy's testimony was that the ordinance had not been strictly enforced because of lack of personnel and that he was unaware of any prosecutions of owners or operators of tow trucks for a period of sixteen months preceding the date of his testimony on February 17, 1977. He recalled one occasion when a wrecker towed a stolen vehicle and a warrant was issued and later withdrawn, but he was personally aware of a number of documented cases involving stolen vehicles which could only have been moved by a tow truck. His Section had a stolen vehicle recovery rate of about 70%, and approximately 30% of these were derelict vehicles which could not have been removed without a tow truck. He also knew of instances where tow truck operators had been contacted by car thieves and offered money to assist in moving stolen vehicles.

Mr. John Thompson's testimony was that the actual cost to the City in the issuance of a wrecker license was approximately $30.00, based upon costs of printing the licenses, applications and books, salaries and employee benefits. The license fee is deposited in the City's general fund. In 1976 the License Collector issued 280 tow truck licenses. One criteria used in determining whether an applicant is of good moral character before a license is issued, is whether the applicant could furnish the insurance policy or indemnity bond required by the ordinance. The License Collector's office forwards all applications to the police department for the character investigation required by the ordinance. He assumes that the police department conducts the investigation and would advise the License Collector's office if an applicant was found not to be of good character. He knew of no written guidelines to determine what constitutes good moral character. While tow truck owners are required to file a schedule of prices with the License Collector, the office takes no part in setting the prices which an owner may charge for wrecker service. These price schedules, once filed, may be inspected by customers and anyone who is interested in seeing them, including competitors in the business.

The testimony of the three owners of wrecker services were directed at the cost to be incurred if they were required to comply with different provisions of the ordinance. Among these costs are those attributable to the expense incurred in painting and lettering the wreckers as required by § 664.070, and reprinting of business stationery and forms. One of the owners testified that he estimated compliance with that requirement of the ordinance that the owner of a prospective tow be present at the scene to sign the form authorizing the job, § 664.080(b), would cause him to incur an additional expenditure for office personnel to help with the paper work involved. He would also have to spend about $200.00 for refiling with the State and the Missouri Public Service Commission.

They also testified concerning the ban on short-wave radio receivers imposed by § 664.100(1). One admitted that this prohibition might, in fact, result in protecting the owners from confusion at the scene of a tow; another admitted he would probably not lose any business by reason of this section of the ordinance; and a third, admitted that the ban would not work a hardship on his business.

According to Mr. Bogin about 50% of Atlas' gross income was derived from interstate towing; 10% of the gross revenue of another of the owners came from interstate towing; and 30% of the third witness' business came from interstate towing.

All admitted that had they complied with the requirements of the ordinance when they started in the tow truck business these expenditures of which they now complain would have been minimal.

Approximately 35% of Atlas' business is conducted within the City of St. Louis and, although it has been in business since 1967 —five years after the ordinance went into effect—it did not make application for a

license for its wreckers in 1977. At trial time Atlas was under contract with two municipalities. Mr. Thompson operates under an "agreement" with the City of Fenton to tow vehicles and receives calls from the Missouri State Highway Patrol for towing services and many of these involve disabled cars on Interstate Highways 44 and 270. Convent Garden Towing Service does some towing for the police.

The defendants offered one witness, Walter E. Abell, the Administrative Assistant to the Director of Streets of the City of St. Louis. He testified that a major reason for the enactment of the ordinance was traffic problems at the scenes of accidents which resulted from the arrival of two or three tow trucks and arguments which ensued over which would get the tow. There were also some instances of overcharging persons in need of a tow who, because of the stress of the situation, had no bargaining power. Revenue was not a consideration.

At the time of trial, Mr. Abell had occupied his position with the City for twelve years and had been an employee of the Street Department for twenty-five years. One of his responsibilities was the towing of vehicles which had been stolen and recovered by the police, were illegally parked, or had been involved in accidents. Between 10% and 15% of the tows he authorized involved derelict vehicles, and he requested tows for such vehicles about ten times a week. Approximately 14,000 cars a year were towed within the past three years. St. Louis Towing Company, for the four years preceding the trial, had an exclusive contract with the City and towed about fifty derelict vehicles a week; in approximately 20% of the cases where St. Louis Towing Company was directed to tow a derelict vehicle, it discovered upon arrival at the scene where the vehicle was parked, that it had already been removed. This situation continued until about one year prior to trial when the Street Department changed its procedure and gave notice of the impending tow of the derelict vehicle by pasting a sticker thereon. He had records

which showed that between 1973 and 1975 at least 25% of the derelict vehicles authorized for towing had already been removed by the time the wreckers authorized to tow them, came upon the scene.

Appellants raise essentially the same Points Relied On in this proceedings that were raised in their attack on the St. Louis County Tow Truck Ordinance. *Meyer v. St. Louis County,* 602 S.W.2d 728 (Mo.App.) with the exception of the implied grandfather clause Point espoused in *Meyer.*

■ Here too their initial grounds for a declaration that the ordinance is invalid is that it is not a valid regulation under the police powers of the City because it serves more as a revenue tax than a regulatory license, is unnecessary to protect the public health, safety, morals and welfare, establishes an unreasonable classification, and the problems at which it is aimed are nonexistent or at best de minimis.

Although the City of St. Louis contends that the ordinance could be sustained under its taxing power because the passage of an ordinance taxing the wrecking business is expressly authorized by Art. XX, Sec. 1 of its Charter, as amended, it has taken the position throughout this cause that the ordinance is a valid regulatory measure enacted pursuant to the City's police powers. We agree.

This Point is essentially the same as Points I and II that appellants' counsel presented and argued in *Meyer,* supra.[4] As respondents point out, it is apparent from a reading of the ordinance that it aims at three objectives—"consumer protection, crime prevention, and traffic safety." These objectives clearly are protective of the public health, safety, morals and welfare.

The same reasoning which caused us to refute appellants' position in *Meyer* compels us to find no merit to appellants' contentions in this appeal.

4. These cases were argued before this court on the same day.

■ Appellants' next Point[5] fails to comply with the requirements of Rule 84.04(d) and preserves nothing for review because it consists of a series of abstract conclusionary statements unsupported by any facts and to comprehend its import we would be required to refer to the argument portion of appellants' brief. This results in nothing being preserved for review. *State v. Drake*, 514 S.W.2d 653, 655[2] (Mo.App. 1974).

Appellants' next Point[6] suffers from the same fatal defects the prior Point did and must therefore suffer the same fate, i. e. preserves nothing for review by this court.

■ Appellants contend that the ordinance imposes an improper burden on interstate commerce. In ruling on this point we would note a distinction between this case and *Meyer*, although the distinction does not cause us to reach a different decision in this case.

At trial, Atlas Towing Co. introduced into evidence a certificate of convenience and necessity issued by the Interstate Commerce Commission, authorizing Atlas to engage in "truckaway" business between St. Louis, Missouri, and "points in Illinois;" of "damaged, wrecked, or disabled motor vehicles," and "replacement vehicles for damaged, wrecked or disabled vehicles." We noted in the *Meyer* case that this certificate did not include St. Louis County.

Nevertheless, the same result reached in *Meyer* must be reached here under the authority of *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852, 78 A.L.R.2d 1294 (1960); *Maurer v. Hamilton*, 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969 (1940); *South Carolina State Highway Department v. Barnwell Bros., Inc.*, 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734 (1937); *Kelly v. State of Washington ex rel. Farr*, 302 U.S. 1, 58 S.Ct. 87, 82 L.Ed. 3 (1937); *Sproles v. Binford*, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167 (1932).

In *Campbell Sixty-Six Express, Inc. v. Dalton*, 378 S.W.2d 558, 561–562[4] (1964), our Supreme Court held that a vehicle engaging in intrastate commerce may be subject to licensing requirements even though it is also engaged in interstate commerce.

Furthermore, appellants failed to show how they are injured as a result of the licensing requirements of the ordinance in the operation of their tow truck business in interstate commerce.

We find no merit to this Point.

The judgment of the trial court is affirmed.

STEPHAN, P. J., and STEWART, J., concur.

---

5. Point II: The court erred in its conclusion that the ordinance is not unconstitutional because it violates the due process clauses of the United States and Missouri Constitutions in that it is vague, it provides too much discretion to government officials, and it interferes with freedom of speech and freedom of association.

6. Point III: The court erred in its conclusion that the ordinance is not invalid because it is in conflict with state statutes in that it supercedes prior state legislation that concerns the same subject matter.