**Sadie A. ALLEN, Appellant,**

v.

**WEST AMERICAN INSURANCE COMPANY, Appellee.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

v.

**Anna MOSTOVYCH, Administratrix of the Estate of Nadia O. Mostovych, Deceased, et al., Appellees.**

**Ralph W. HYBERGER, Appellant,**

v.

**Ruby W. HYBERGER et al., Appellees.**

Court of Appeals of Kentucky.

March 19, 1971.

---

Henry V. B. Denzer, Hogan, Taylor, Denzer & Bennett, Robert E. Hogan, Edward F. Rectenwald, Robinson, Rectenwald, Tackett & DeMoss, James F. Donoghoe, Jr., Louisville, for appellants.

Fred C. Dolt, John L. Bennett, Jr., Louisville, W. F. Boelter, Cincinnati, Ohio, for appellees.

DAVIS, Commissioner.

This opinion deals with three separate appeals which have been consolidated because a single legal issue is presented in each of them. Basically, the question presented is whether the uninsured-motorist (UM) provisions of former KRS 304.682, now KRS 304.20-020, impose liability upon an insurance carrier in situations in which "household exclusion" provisions otherwise relieve the company from liability.

In the appeal styled Allen v. West American Insurance Company, F–294–69, Sadie Allen was a passenger in an automobile owned and driven by her husband, William, and she sustained injuries in an accident allegedly caused by William's negligence. Sadie obtained a judgment against William, *pro confesso,* in the sum of $5,000. When an execution was returned "no property found," Sadie named West American Insurance Company as defendant, seeking to enforce collection of her judgment against West which had issued an automobile liability insurance policy to William. The policy contained a "household exclusion" clause and also provided UM coverage. The trial court ruled in favor of West; hence, this appeal by Sadie.

State Farm Mutual Insurance Company v. Mostovych, F–2–70, presents these facts: Professor Mostovych was the owner and driver of an automobile upon which the company had issued a liability insurance policy containing the "household exclusion" and UM coverage. While driving the automobile, Professor Mostovych ran off I–64 in Shelby County. His wife and daughter were killed in the accident, and his son was injured. Professor Mostovych also lost his life in the accident. In an action by the personal representatives of the widow and daughter of Professor Mostovych, the trial court adjudged that the UM provisions of the policy were mandatory and superseded the household exclusion provisions of the policy and entered judgment requiring the insurance company to pay the statutory limits prescribed for UM coverage. The insurance company has appealed.

Hyberger v. Hyberger, W–200–70, presenting the same legal question as the other two cases, has slightly varying facts. Ruby Hyberger, wife of Ralph Hyberger, was driving Ralph's automobile in which he was a passenger. Because of Ruby's alleged negligence, the car ran off the road and Ralph was injured. Ralph had liability insurance with Automobile Club Insurance Company; the policy contained the usual household exclusion provision, as well as UM coverage. The company was permitted to intervene for the purpose of permitting a binding adjudication respecting its responsibility under the policy. The trial court held that Ralph had no claim against his insurance company. Ralph has taken an appeal from that adverse ruling.

The insurance policies in all three cases contain language substantially the same, and exclude from coverage liability for bodily injury to the named insured or any member of the family of the named insured residing in the same household as the insured. This is the "household exclusion," the validity of which is admitted by these litigants and recognized in several decisions of this court, e. g., Third National Bank of Ashland v. State Farm Mut. Auto. Ins. Co., Ky., 334 S.W.2d 261; Orange v. State Farm Mut. Auto. Ins. Co., Ky., 443 S.W.2d 650.

Each of the policies contains within the UM provisions the clause that the term "uninsured automobile" shall not include an automobile defined in the policy as an "insured automobile" or an automobile owned by the named insured.

If there were no UM coverage, it seems plain that the "household exclusion" would preclude liability of the insurance company in each case. However, because the "household exclusion" does operate to prevent coverage, it is reasoned by the various plaintiffs that the respective operators became uninsured motorists, and the automobiles became uninsured motor vehicles, within the purview of the UM coverage of each policy. This seemingly anomalous conclusion is required, argue the plaintiffs, because of public policy considerations expressed or implied by the UM statute and the Financial Responsibility Law (KRS Chapter 187).

The provisions of the UM statute, KRS 304.682 (recompiled as 304.20–020), are:

"(1) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in KRS 187.330(3) under provisions approved by the Commissioner of Insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject in writing such coverage; and provided further that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

"(2) For the purpose of this coverage the term 'uninsured motor vehicle' shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency; an insured motor vehicle with respect to which the amounts provided, under the bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such motor vehicle, are less than the limits described in KRS 187.-330(3); and an insured motor vehicle to the extent that the amounts provided in the liability coverage applicable at the time of the accident is denied by the insurer writing the same.

"(3) Protection against an insurer's insolvency shall be applicable only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is in effect where the liability insurer of the tortfeasor becomes insolvent within one year after such an accident. Nothing herein contained shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to its insureds than is provided hereunder.

"(4) In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer."

It will be observed that subparagraph (1) of the statute requires the UM coverage unless the insured rejects it in writing. Within that framework, the coverage may be described as "automatic" but not completely "compulsory," since it does admit of written rejection.

Subparagraph (3) of the statute prescribes three situations in which the term "uninsured motor vehicle" shall be deemed to include an insured motor vehicle. Those are (1) when the insurance carrier is unable to make payment with respect to the legal liability of its insured because of the company's insolvency (a situation which does not obtain in any of the three cases on appeal); (2) when the limits of coverage afforded are less than the limits described in KRS 187.330(3), $10,000 for one person and $20,000 limit for death or injury of two or more persons in any one accident, a situation which is not present in these cases; and (3) to the extent that the insurance carrier denies liability for the coverage applicable at the time of the accident.

The plaintiffs contend that the respective insurance companies effectively denied liability for the coverage applicable at the time of the accident by invoking the "household exclusion," thereby activating the UM provisions of the policies to the extent of the limits prescribed in KRS 187.330(3). This argument is based primarily on the premise that UM coverage is a statutorily *required* coverage, so that no policy provision in derogation of the re-

quired coverage can be upheld. In support of this view the plaintiffs cite Tharp v. Security Insurance Company of New Haven, Ky., 405 S.W.2d 760, and Meridian Mutual Ins. Company v. Siddons, Ky., 451 S.W.2d 831. There could be no valid quarrel with the legal principle which invalidates policy provisions written in derogation of statutorily required coverages. The question here is whether the exclusion is in derogation of the statute. It seems clear that no language of the statute expressly forbids the "household exclusion," unless it can be considered that application of the exclusion is equatable with a denial of "the amounts provided in the liability coverage applicable at the time of the accident" within the purview of KRS 304.20–020(2).

In weighing that question, it is appropriate to notice the opening words of the same section of the statute, which are:

"For the purpose of this coverage (UM) the term 'uninsured motor vehicle' shall, *subject to the terms and conditions of such coverage,* be deemed to include an insured motor vehicle * * *." (Emphasis added.)

In using the italicized language, the Legislature recognized that there would be "terms and conditions of such coverage" to which the statute's application would be subject. In that same portion of the statute, the Legislature enumerated only three situations in which an insured motor vehicle will be deemed an "uninsured motor vehicle" within the meaning of UM coverage. If the solons had intended that the UM provisions should become applicable with respect to an insured vehicle regardless of the policy provisions, it is difficult to discern why the words "subject to the terms and conditions of such coverage" were employed. What "terms" and what "conditions" are permissible?

"Household exclusion" provisions have been upheld by this court. Third National Bank of Ashland, Adm'r v. State Farm Mutual Automobile Ins. Co., Ky., 334 S.W.2d 261; Orange v. State Farm Mutual Auto-

mobile Ins. Co., Ky., 443 S.W.2d 650. Presumably the Legislature was cognizant of that fact. Cf. Prudential Bldg. & Loan Association v. Urban Renewal and Community Development Agency of Louisville, Ky., 464 S.W.2d 629 (decided March 12, 1971). In adopting UM coverage the Legislature did not specify that such an exclusion would be invalid. Had that been the desired result, the General Assembly easily could have so provided. Its failure to do so affords basis for the construction that the statute does not invalidate the exclusion. Hence, the "household exclusion" is not in derogation of the UM statute.

The various plaintiffs cite Bowsher v. State Farm Fire & Casualty Company, 244 Or. 549, 419 P.2d 606; Whitney v. American Fidelity Company, 350 Mass. 542, 215 N.E.2d 767; Lopez v. State Farm Fire & Casualty Company, 250 Cal.App.2d 210, 58 Cal.Rptr. 243; Stevens v. American Service Mutual Ins. Company (D.C.App.) 234 A.2d 305; Hendricks v. Meritplan Insurance Company, 205 Cal.App.2d 133, 22 Cal.Rptr. 682; Forbes v. Allstate Insurance Company, Fla.App., 210 So.2d 244; Vaught v. State Farm Fire & Casualty Company (8 Cir.) 413 F.2d 539; Hodges v. Canal Insurance Company, Miss., 223 So.2d 630; and other cases which have held that the UM coverage was available in varying factual situations. It would unduly extend the opinion to analyze and distinguish each of the decisions cited. For the most part it appears that the applicable statutory provisions in those cases led the courts to the conclusions that UM coverage prevailed. There is no statutory provision in Kentucky requiring that result. In Barras v. State Farm Mutual Automobile Insurance Company, 118 Ga.App. 348, 163 S.E.2d 759, and Barnes v. Powell, 129 Ill.App.2d 16, 262 N.E.2d 334, the holdings were similar to those reached now by this court in substantially similar circumstances.

Neither is there merit in the contention that the provisions of the Financial Responsibility Law (KRS Chapter 187) invalidate the "household exclusion." As noted by appellee West American Insurance Company, the Financial Responsibility Law is composed of two parts. The first section, which may be called the "security" section, is contained in KRS 187.330 to KRS 187.390. The other part relates to "proof" of financial responsibility, which is required in circumstances not present in any of the cases upon appeal. See KRS 187.450, et seq. The requirements for proof of financial responsibility include a "motor vehicle liability policy." Its permissible terms are delineated in KRS 187.490. The policy involved in Tharp v. Security Insurance Company of New Haven, Ky., 405 S.W.2d 760, was one purporting to evince proof of financial responsibility as required by KRS 187.470, subject to the requirements of KRS 187.490. Such is not the case in any of these appeals.

The "security" portions of KRS Chapter 187 do not preclude permissible policy defenses. There is no provision within the "security" portion of KRS Chapter 187 which forbids the "household exclusion." Cf. Kentucky Farm Bureau Mut. Ins. Company v. Miles, Ky., 267 S.W.2d 928, and State Automobile Mutual Ins. Company v. Sinclair (W.D.Ky.) 96 F.Supp. 267. In the latter case, Chief Judge Shelbourne pointed out that KRS 187.290(11) defined "proof of financial responsibility" as:

"Proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective data of said proof, arising out of the ownership, maintenance, or use of a motor vehicle * * *."

The statute's reference to "accidents occurring *subsequent*" to the proof was construed to denote the "in futuro" aspect of the "proof part" of the Financial Responsibility Law. See KRS 187.290(10) as presently compiled. That interpretation of the statute was proper.

The judgments are affirmed in the appeals styled and numbered: Sadie A. Allen v. West American Insurance Company (F-294-69); Ralph Hyberger v. Ruby W.

Hyberger (W–200–70). The judgment is reversed in the appeal styled and numbered State Farm Mutual Automobile Insurance Company v. Anna Mostovych et al. (F–2–70) with directions to enter a new judgment absolving the company from liability.

All concur.