STATE of Missouri ex rel. SAFETY
AMBULANCE SERVICE, INC., a
corporation, Relator,

v.

The Honorable Byron L. KINDER, Judge
of the Circuit Court of Cole County,
Missouri, Respondent.

No. 59714.

Supreme Court of Missouri
En Banc.

Nov. 14, 1977.

William L. Hess, Kansas City, for relator.

Harvey M. Tettlebaum, Jefferson City,
for amicus curiae State of Missouri.

William E. Stoner, Springfield, for respondent.

ORIGINAL ACTION FOR PROHIBITION

RENDLEN, Judge.

Prohibition to direct respondent Circuit
Judge of Cole County, to quash the writ of
mandamus issued July 1, 1976, in *State ex
rel. Safety Ambulance Company, Inc. v.
Missouri Division of Health, et al.*, No.
28182 [1] and desist from enforcing the same
against the Missouri Division of Health.

1. Among the named defendants-respondents
are Carl Rutledge, Assistant Director of Bureau
of Emergency Medical Services, and Al Miller,
d/b/a Action Emergency Ambulance. Rutledge testified he was the duly appointed "licensing officer" under the Act as that term is
defined in subsection 190.100(8).

All statutory references are to RSMo Supp.
1975, unless otherwise indicated.

The principal question for determination is whether Missouri's recently enacted ambulance licensing law, Sections 190.100 through 190.195,[2] effective July 1, 1974, implicitly permits issuance of licenses to those ambulance operators in business prior to the effective date of the Act, without a hearing to determine the "public convenience and necessity." Such provisions, not uncommon in the law, allowing special dispensation to going businesses when statutory changes occur are known colloquially as "grandfather" clauses.

Relator, Safety Ambulance Service, Inc. (hereinafter Safety), owned and operated an ambulance service in the Springfield-Greene County area for about thirteen years prior to the effective date of the Act. Continuing operations during 1974, Safety applied to the Missouri Division of Health and was issued a license in January, 1975, on the Division's administrative determination that Safety had been in business on the effective date of the Licensing Law and was entitled to the benefits of the "grandfather" provision implicit therein. About nine months later Al Miller, d/b/a Action Emergency Ambulance (hereinafter Miller) of Greene County, was issued a "grandfather" license by the Division. Safety promptly petitioned the Circuit Court of Cole County, in Case No. 28182, for mandamus and review of the Division's issuance of Miller's license, contesting the fact of Miller's operation prior to July 1, 1974 and his entitlement to protection of the "grandfather" provision.[3] By Count I, Safety sought mandamus to require that respondent, Division of Health, withdraw Miller's license and require notice, hearing and finding of public convenience and necessity, prior to issuance of any new license. By Count II, Safety sought injunction to restrain Miller from operating an ambulance service in Greene County under the "void" license and by Count III a review of the Division's ruling under Chapter 536, RSMo 1969, and for suspension of "any purported power granted by said license."

The court, proceeding on Count I, issued its alternative writ of mandamus to the Division of Health, return was made to which Safety replied, the cause was set and without Miller or his counsel present, evidence was adduced and the matter taken under advisement January 16, 1976. Miller, though not a party to Count I had previously moved to dismiss Counts I, II and III, but that motion does not appear to have been ruled. On January 13, Miller's motion for a legislative continuance was sustained as to Counts II and III, but denied as to Count I because, according to the court, Miller had not "pleaded to" and was "not a party" to the action on that Count. At the January 16 hearing, Safety presented evidence concerning Miller's application plus evidence pointing up the paucity and conflicting nature of the information on which the "license officer" acted when determining Miller was doing business on the effective date of the Licensing Law. On June 15, 1976, the City of Springfield which also operated an ambulance service in the area, was permitted to intervene, and on that date the court issued its peremptory writ, finding Safety was "an interested party pursuant to Chapter 190" and that:

2.  The new statute regulates "Ambulances, Ambulance Personnel and Emergency Treatment", however, sections pertinent to this proceeding are those relating to *licensing* of *ambulances*. For convenience, the statute will be referred to as the "Licensing Law" or the "Act".

3.  It is not disputed that the determination of the license officer issuing Miller's license is appealable by relator as "an adversely affected party" within thirty days of issuance under § 190.170(7), which provides:

   "All rulings by the board, license officer or health officer may be appealed by the ad-

versely affected party within thirty days of issuance. The appeal shall be filed with the circuit court of Cole county, Missouri, pursuant to the provisions of chapter 536, RSMo." This suggests several questions not answered here: (1) What other actions of the license officer constitute "rulings" under subsection 190.170(7)? (2) What are the requirements of notice to *adversely affected* parties? (3) How does notice or lack thereof affect the thirty day filing period?

"this court having heard the evidence thus finds from the evidence that the acting [sic] of respondents in issuing a State Ambulance License to Al Miller d/b/a Action Emergency Ambulance for the territory of Green [sic] County, without notice, hearing, and finding of public convenience and necessity was beyond the scope of their ministerial duties and duties as licensing agents for the Missouri Division of Health, and in excess of Statutatory [sic] power granted to them as licensing agents and officers."

Miller's license was voided and the Division was ordered to conduct a hearing as to the public convenience and necessity on Miller's application.

From this it is not clear if the court ruled the hearing was required because (1) there is no implied grandfather provision in the statute; or (2) there *is* a grandfather provision but from the evidence Miller was shown not to have been operating an ambulance service on July 1, 1974.

Ten days later, Miller moved to amend the writ, and without further notice or hearing the court on July 1, issued its amended peremptory writ of mandamus, finding that respondent, Division of Health, acted in excess of its authority by granting the license to Miller and then, quite beyond the scope of the pleadings and evidence, voided the licenses of relator, the intervenor City of Springfield, and the Lester E. Cox Medical Center of Springfield. (The Cox Medical Center was neither a party nor otherwise involved in that action.) The Division was ordered to immediately schedule hearings as to public convenience and necessity for the four named licensees (now presumably mere license applicants). Though again the court did not make clear why the hearings to determine "convenience and necessity" were required, it was uncontroverted that Safety had continuously operated many years prior to the effective date of the Act and if the statute permitted grandfather licensing, Safety qualified. From this we conclude the basis for the court's decision was its interpretation of the Act as not containing an implied grandfather provision.

Complaining of the court's action, Safety petitioned this Court for prohibition to require respondent to quash its amended writ and to desist from enforcing the same against the Division of Health. Our provisional rule issued.

The question is raised whether prohibition lies or is relator's remedy appeal? By the peremptory writ respondent disposed of the issues in Count I but those of Counts II and III remained, requiring further proceedings to determine the question of the injunction and restraining orders as to Miller. The order was not appealable as respondent did not designate it a final judgment for that purpose. Rule 81.06. Further, when as here the action of the court sought to be prohibited is neither complete nor self-executing, see *State ex rel. Templeton v. Seehorn*, 208 S.W.2d 789 (Mo.App.1947), prohibition may be invoked to restrain the enforcement of such orders if beyond or in excess of the authority of a judge and to keep a court within the compass of its jurisdiction. *State ex rel. Vogel v. Campbell*, 505 S.W.2d 54, 58 (Mo.banc 1974). Respondent, by mandamus, attempted to void the Division's prior action awarding Safety its license when the issue as to that action was neither raised nor suggested in pleadings or proof. The issue was not before the court for adjudication, thus its ruling, reaching beyond the issues, was coram non judice and void to the extent it purports to revoke Safety's license and require a hearing by the Division of Health Services. *Bayer v. Associated Underwriters, Inc.*, 402 S.W.2d 11, 13 (Mo.App.1966). We find the trial court exceeded its jurisdiction in the particulars described above and for this reason as well as those hereinafter discussed, prohibition lies and our provisional rule will be made absolute.

Respondent's order of July 1 1976, affecting the four named licensees, stems from his erroneous conclusion that the Ambulance Licensing Law contains no implied grandfather clause. While the Licensing Law, §§ 190.100 through 190.195 contains no express grandfather clause, we conclude

such provision is implicit in the Act and we discern no legislative intent to require hearings to determine public convenience and necessity for ambulance services in operation on July 1, 1974. Conversely we determine that provisions requiring such hearings do extend to "proposed" ambulance services commencing business after the effective date of the Act.

Section 190.125.1 requires that "The license officer shall, upon receipt of an application for an ambulance license . . . cause such investigation as he deems necessary to be made of the applicant and of his *proposed* operations." (Emphasis added.) Subsection 2 provides: "The license officer shall issue a license hereunder for a specified ambulance, to be valid for a period of one year, . . . when he finds, upon proper notice and hearing: (1) that the public convenience and necessity require the *proposed* ambulance service;" (Emphasis added.) The use of the term *proposed* in both subsections indicates such hearings and findings are required only as to prospective ambulance businesses not then in service.[4] This interpretation is reinforced by the terms of § 190.170, which delineate procedures for hearings, investigations, notices and appeals. Subsection 190.170.4 provides:

"A hearing shall be afforded any applicant seeking a license, *the issuance of which requires a finding concerning the public convenience and necessity.* Notification by regular mail of each hearing shall be sent to all interested parties including ambulance operators already licensed for service in the area affected by the applicant. Notification shall be mailed at least ten days prior to the hearing." (Emphasis added.)

The emphasized language in effect states that issuance of licenses in some situations *does not require findings* concerning public convenience and necessity, and that hearings are mandated only as to those that do. Thus hearings are not necessary as to license applications where *no such finding* is required. Respondent, in oral argument, conceded the language of § 190.170.4 indicates that certain classes or types of license applicants need not be afforded hearings because no "finding concerning the public convenience and necessity" is required as to such class. Though conceding such exempt class is recognized by the subsection respondent insists that it is limited, relating only to drivers, attendants, technicians and similar applicants. However, nothing in the statute requires such narrow construction. The class in subsection 4 is described only in the most general terms, demonstrating a legislative intent sufficiently broad to include not only the list suggested by respondent but also permit inclusion of *ambulance license applicants* in service on the effective date of the Act. This interpretation is in harmony with and supportive of the previous analysis that only "proposed" or new ambulance services require hearings of convenience and necessity under § 190.125.

It is appropriate that we examine the undergirding purpose of the hearing requirement in the statute. Why, we ask, is a hearing and finding of public convenience and necessity required as a precondition to the issuance of licenses for *proposed* ambulance services? Operators of existing services may appear at such hearing and demonstrate under § 190.170.5 [5] that they will be able to meet any additional need of the area to be served. Clearly the primary purpose of such hearing is to determine whether need exists. If a going business was serving an area on July 1, 1974, the fact of need is self-evident. The reason for

4. This does not relieve existing ambulance services from meeting the equipment, safety, financial, personnel, insurance and other requirements of Chapter 190.

5. § 190.170.5 provides: "Prior to a finding by the board, license officer or health officer that the public convenience and necessity will be served by the issuance of a license to the appli-

cant, all ambulance operators currently licensed in the area to be serviced by the applicant shall be given thirty days to satisfy the board, license officer or health officer that they will be able to meet the additional need in the area to be serviced not later than sixty days from the date of the denial of the applicant's license."

a determination of convenience and necessity having been satisfied, the legislature cannot have intended the Division to perform an unnecessary act. As noted, when an applicant proposes to begin or bring new service to an area currently served by others, the hearing under § 190.170.5 examines for "the additional need in the area to be serviced," and grandfathered operators are given the opportunity to fill the need, and to exclude the *proposed* operator. This is consistent with our statutory interpretation discussed above.

Finally, practical considerations compel such interpretation. From oral argument we learned that seven hundred and five ambulance vehicles were operating in Missouri on July 1, 1974, and approximately six hundred and twenty are now licensed under the Act. Section 190.180 prescribes severe penalties for violation or failure to comply with the provisions of the Act, with each day's violation constituting a separate offense. Section 190.105 mandates that no person shall operate or otherwise be engaged in the ambulance business upon public streets or highways of Missouri unless "he holds a currently valid license for an ambulance". If grandfather licenses had not been permitted, existing ambulance services would have been barred from operation during the period required for the hearing process. One can readily perceive the disruptive effect to service and the resulting financial loss to operators during a period of enforced idleness occasioned by such proceedings. We cannot believe the legislature intended such a threat to the quality and availability of ambulance service to say nothing of the Division's capacity (or lack thereof) to process such volume in an expeditious manner.

The specter of disrupted service reaches the absurd when considering problems of license renewals if respondent's interpretation of the statute were adopted. Section 190.160 provides "The *renewal* of any license shall require conformance with all the requirements of sections 190.100 to 190.-195 [the Act] as upon original licensing." (Emphasis supplied.) Under § 190.125.2 ambulance licenses are valid for only one year (unless earlier terminated) and on expiration renewals are processed as original applications under § 190.125. If, as respondent contends, there is only one type of "original" ambulance licensing, which in every case would require hearing upon proper notice and a determination of convenience and necessity, that requirement would extend to *all renewal* applications. Intolerable results, of the sort we now describe would ensue: Assume three licensed ambulance services, A, B and C operated in a described area. (In the case at bar at least four such businesses operate in Greene County.) Assume further A's license expires April 30, B's July 31 and C's December 31, and that on expiration of his license, A applies for renewal. Under the scheme insisted by respondent, prior to a finding of convenience and necessity which would be a prerequisite for A's renewal, B and C, could effectively block the renewal of A's license. This because, B and C, as operators "currently licensed in the area to be serviced by the applicant" would be entitled "to satisfy" the license officer "that they will be able to meet the additional need in the area" and from the preferred position afforded them by 190.170.5, effectively thwart A's application and in the months following absorb his lost share of the market. When B's license expires July 31, the process would repeat itself and C, by expanding his service to the satisfaction of the license officer would block B's renewal. Thus A would be effectively shelved for eight months and B for five, until the expiration of C's license December 31. This situation becomes more bizarre when C applies for renewal. No other operators would then be servicing the market and C could contend that he has a right to continue as the exclusive operator in the area, but at his hearing all other applicants, including A and B (assuming they sustained an interest in serving and were solvent) could appear and from the resulting tangle the Division would be called to somehow determine the public convenience and necessity and apportion the market among those applying or throw up its hands and admit all comers.

Few businesses could long survive such a recurrent disorderly process. Such a scheme could not have been intended as it would serve to defeat the legislative intent of promoting efficient ambulance and health service in the state.

■ We presume the legislature did not intend to enact an absurd law, *State ex rel. American Manufacturing Company v. Koeln,* 278 Mo. 28, 211 S.W. 31, 33 (banc 1919), and in construing the Act "We look to the circumstances and usages of the time; we seek to promote the purposes and objects of the statute and to avoid any strained and absurd meaning." *Springfield General Osteopathic Hospital v. Industrial Commission,* 538 S.W.2d 364 (Mo.App.1976). As stated in *State ex rel. Missouri Power and Light Co. v. Riley,* 546 S.W.2d 792 (Mo.App.1977), "[The] laws are presumed to have been passed with a view to the welfare of the community." [l. c. 796] This is not to say the court may capriciously ignore the plain language of the statute "but in determining what the language really means we may consider the entire purpose and policy of the statute and 'the language in the totality of the enactment' and construe it in the light of 'what is below the surface of the words and yet fairly a part of them'." *State ex rel. Henderson v. Proctor,* 361 S.W.2d 802, 805 (Mo.banc 1962). The legislative act must be considered in its entirety and all provisions harmonized, if reasonably possible. Guided by these principles, we conclude the Licensing Law does not require a hearing concerning the public convenience and necessity as to ambulance license applications, whether original or renewal, for those operators in business and providing service on July 1, 1974, and continuously thereafter. Further, the "grandfather" provision would extend to any new service when duly licensed following hearing and determination of the public convenience and necessity.

Respondent is prohibited from enforcing the peremptory writ of mandamus issued July 1, 1976 and directed to quash the same. Further proceedings may be had in the cause not inconsistent herewith. Our provisional rule as modified hereby is made absolute.

BARDGETT, HENLEY, FINCH, DONNELLY and SEILER, JJ., and STEWART, Special Judge, concur.

MORGAN, C. J., not sitting.