Betty HARRISON, Appellant,

v.

MFA MUTUAL INSURANCE CO., Respondent.

Kathy PRIDGEN, Appellant,

v.

MFA MUTUAL INSURANCE CO., Respondent.

No. 61940.

Supreme Court of Missouri, En Banc.

Sept. 9, 1980.

Rehearing Denied Oct. 15, 1980.

Max W. Foust, G. Spencer Miller, Kansas City, for appellants.

Michael J. Maloney, Kansas City, for respondent.

SEILER, Judge.

This is an appeal from a directed verdict in a consolidated suit brought under an uninsured motorist insurance clause for damages sustained in a single vehicle automobile accident. The court of appeals, western district, ordered the case transferred to this court after opinion because of the general interest and importance of the questions presented and the need for a reexamination of the law. We will treat

1. Missouri follows the majority rule which upholds the validity of the "household exclusion" in automobile liability insurance policies. *State*

the case as though here on original appeal. Mo.Const. art. V, § 10.

Plaintiffs' evidence established the following facts: On October 30, 1972, Vernon Bush lost control of his Plymouth automobile while driving at a speed in excess of the posted 50 miles per hour speed limit on M–291 Highway in Jackson County, Missouri. The automobile skidded and turned over. Bush was killed and his two passengers, plaintiffs herein–his wife, Betty (now Betty Harrison) and his stepdaughter, Kathy Pridgen–were injured. It is undisputed that Bush, his wife and stepdaughter all resided in the same (Bush's) household.

At the time of the accident, there was in effect an automobile liability insurance policy issued by defendant MFA Insurance Company to Vernon A. Bush as the named insured on the 1968 Plymouth automobile which he was driving. Defendant denied coverage of plaintiffs' original claims for their personal injuries under the liability section of the policy on the basis of the policy's "household exclusion" clause, which excludes coverage for "bodily injury to the insured or any member of the family of the insured residing in the same household as the insured." [1] Such an exclusion is inherent in the concept of liability insurance, which contemplates protection of the insured against liability running from the insured to another. Thus, even though Bush was negligent, the policy did not at any time extend liability coverage for bodily injury to members of the household who were injured while riding with the named insured. There is no direct claim to the contrary asserted in this appeal, although were plaintiffs to prevail in the position they take infra, it would effectively neutralize the clause excluding intra–family liability.

In the position to which we refer, plaintiffs are claiming coverage under the uninsured motorist section of the policy by which defendant agreed to pay "all sums which the insured or his legal representa-

*Farm Mut. Auto. Ins. Co. v. Ward*, 340 S.W.2d 635 (Mo.1960).

tives shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle . . . ." With respect to this coverage, the policy provided that "insured automobile" means "the described automobile" [*i. e.*, the 1968 Plymouth described in the policy] and that the term "uninsured highway vehicle" shall not include "an insured automobile." Accordingly, defendant refused to pay plaintiffs under the uninsured motorist section on the basis that the policy's definitions and exclusions barred coverage.

Plaintiffs each filed suit alleging defendant's liability under the provisions of the uninsured motorist section. By stipulation of the parties, the suits of plaintiffs were consolidated for trial, a jury was waived, and the causes were submitted to the court as to the issue of liability. At the close of plaintiffs' evidence, defendant filed a motion for directed verdict which the trial court sustained. On appeal, plaintiffs (hereinafter "appellants") allege that the trial court erred in granting the directed verdict, on the ground that the terms and conditions of the policy issued by defendant (hereinafter "respondent") were ineffective as vague, ambiguous and unclear, as well as violative of public policy.

## I

Appellants assert that "the issue that must be decided is: What is an 'uninsured highway vehicle'?" Appellants concede that if the definition of "uninsured highway vehicle" as set forth in respondent's policy is applicable and valid, the judgment of the trial court must be affirmed.

■ Examination of the provisions of the "uninsured motorist insurance" section of Bush's policy shows that the terms of the policy extend coverage only to persons injured by an "uninsured highway vehicle." Therefore, to recover damages under this section appellants must show that Vernon Bush was driving an "uninsured highway vehicle" within the meaning of that term as used in the policy. An "uninsured highway vehicle" is defined in the policy to exclude "*an insured automobile* or a highway vehi-

cle furnished for the regular use of the named insured, his spouse, or a relative." (emphasis added). An "insured automobile" is defined to mean the automobile described in the policy. By policy definition, then, the Bush 1968 Plymouth automobile, as the automobile described in the policy, was not an "uninsured highway vehicle"; instead it was an "insured automobile." Accordingly, appellants cannot show that they were injured by an "uninsured highway vehicle" and are ineligible to recover damages under the "uninsured motorist insurance" section of the policy.

■ In *Miles v. State Farm Mut. Auto. Ins. Co.*, 519 S.W.2d 378 (Mo.App. 1975), the court of appeals addressed a similar question concerning a one vehicle accident. There plaintiff sued his automobile insurer under the uninsured motor vehicle provisions of his policy. Plaintiff pleaded he was injured in a one car accident while a passenger in his own automobile then being driven by his "uninsured" brother, who was "negligently operating an uninsured automobile." There as here, the policy provided that the term "uninsured motor vehicle" shall not include the "insured vehicle." The court found that the policy language refuted plaintiff's contention and that nothing in the insurance policy contravened Missouri public policy as set by the uninsured motorist statute. We agree with the result reached in *Miles* and the determination that the provision of the policy that the term "uninsured motor vehicle" shall not include an "insured motor vehicle" does not contravene public policy as set by section 379.203, RSMo 1978, which requires liability policies to afford coverage to insureds who are legally entitled to recover damages from owners or operators of uninsured motor vehicles.

■ Neither the present case nor *Miles* involved a two vehicle accident, but we do not read *Miles* as requiring in a two vehicle accident no more than an inquiry whether any insurance applied to the second vehicle under any circumstances as determinative of whether the vehicle was "insured" or

"uninsured" for the purposes of required uninsured motorist coverage. Whether a motor vehicle is insured or uninsured by liability coverage depends on whether the liability coverage is applicable under its terms and conditions in light of the specific circumstances of the vehicle's operation. The liability coverage is applicable if all conditions of the policy are met. Questions of applicability of liability insurance can be answered on the basis of events which precede an accident. For example, a liability policy is not applicable, and hence the vehicle is uninsured, where the automobile is driven by a thief or a non–permissive user, even though the automobile in question is the described automobile of the liability policy.

## II

Appellants maintain that the term "uninsured highway vehicle," as used in the uninsured motorist insurance section of the policy (Section V) is unclear, vague and ambiguous and that such ambiguity must be resolved in favor of coverage. The pertinent definitions in this section state:

" 'insured' means:

(a) the named insured, his spouse, and any relative; . . .

\* \* \* \* \* \*

" 'insured automobile' means"

(a) the described automobile;

(b) a non–owned automobile while being operated by the named insured; . .

\* \* \* \* \* \*

" 'uninsured highway vehicle' means:

(a) a highway vehicle with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such highway vehicle, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder, or

(b) a hit–and–run highway vehicle;

but the term "uninsured highway vehicle" shall not include:

(1) an insured automobile or a highway vehicle furnished for the regular use of the named insured, his spouse, or relative.

(2) a highway vehicle owned or operated by a self–insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law,

(3) a highway vehicle owned by any federal, state, territorial, provincial, or municipal government, a political subdivision, department, or agency of any of them,

(4) a highway vehicle operated or used by any person as an employee of the United States Government . . .

(c) an insured highway vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits of any applicable financial responsibility law because of insolvency . . . .

" 'hit–and–run highway vehicle' means a highway vehicle which causes bodily injury to an insured arising out of physical contact of such highway vehicle with the insured or with an automobile which the insured is occupying at the time of the accident, provided: (a) there cannot be ascertained the identity of either the operator or owner of such 'hit–and–run highway vehicle'; . . . ."

It is appellants' position that an ambiguity is created by the placement of the provision defining the term " 'uninsured highway vehicle' after the reference to a "hit–and–run highway vehicle". Appellants contend that this placement leads one to believe that the four exclusionary definitions relate only to the term "hit–and–run highway vehicle." Accordingly, appellants urge that the ambiguity be resolved in favor of coverage and the trial court's directed verdict be held in error. Appellants cite no decision support-

ing their view and even a casual reading of the four types of vehicles excluded from the term "uninsured highway vehicle" (the insured's automobile; a vehicle owned or operated by a certified self–insurer in whose name at least twenty–five vehicles are registered; a vehicle owned by a governmental entity; a vehicle within the provisions of the Federal Tort Claims Act, e. g. a mail truck) discloses that none of the four would be what is commonly thought of as a hit–and–run automobile. For example, the insured automobile is one of the classes of vehicles not within the term "uninsured highway vehicle", and it would be fallacious to argue that in the absence of this exclusionary definition an insured automobile—*i. e.*, the automobile described in the policy–with the person in it who is making the claim, could be a hit–and–run vehicle, to say nothing of the fact that "hit–and–run highway vehicle" is expressly defined elsewhere in the same part of the policy, a further reason why the four exclusionary definitions are not restricted as appellants contend.

 When viewed in context with the other provisions and definitions in the unin-

sured motorist insurance section, the disputed language is consistent in meaning and unequivocally excludes coverage to appellants in this case. Where language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of a policy. *State Farm Mut. Auto. Ins. Co. v. Ward*, 340 S.W.2d 635, 639 (Mo. 1960). "[T]he courts are not authorized to pervert language or exercise inventive powers for the purpose of creating an ambiguity when none exists.'" *Ibid.* We refuse to create an ambiguity under the policy language where none exists so as to construe the imaginary ambiguity in such a way to reach a result which some might consider desirable but which is not otherwise permissible under the policy or the law.

### III

Appellants also contend that if the terms of the policy exclude them from uninsured motorist insurance coverage, such terms should be held ineffective as violative of public policy. Appellants cite section 379.-203.1, RSMo 1978,[2] for the legislature's ex-

---

**2.** Section 379.203, RSMo 1978, provides:

"1. No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits for bodily injury or death set forth in section 303.030, RSMo, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. Provisions affording such insurance protection against uninsured motorists issued in this state prior to October 13, 1967, shall, when afforded by any authorized insurer, be deemed, subject to the limits prescribed in this section, to satisfy the requirements of this section.

"2. For the purpose of this coverage, the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the

legal liability of its insured within the limits specified herein because of insolvency.

"3. An insurer's insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is in effect where the liability insurer of the tortfeasor becomes insolvent within two years after such an accident. Nothing herein contained shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to its insureds than is provided hereunder.

"4. In the event of payment to any person under the coverage required by this section, and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer; provided, however, with respect to payments made by reason of the coverage described in subsections 2 and 3 above, the insurer making such payment shall not be entitled to any

pression of public policy in requiring insurance companies to provide within their automobile insurance policies uninsured motorist coverage "for the protection of persons insured thereunder who are legally entitled to recover damages *from owners or operators of uninsured motor vehicles* . . . ." (emphasis added).

As set out earlier, the accident in this case involves only the insured vehicle. Appellants contend that the cited statute mandates that uninsured driver whose coverage for injuries to himself and members of his household is excluded under the express terms of the liability section of the policy is nonetheless covered under the uninsured motorist section of his own policy because the liability exclusion makes him an "uninsured motorist." Appellants contend, therefore, that the statute requires insurance companies to extend their coverage in such cases on the insured vehicle and to consider an insured or a member of his household driving the vehicle to be an "uninsured motorist" under the insurance policy for the purposes of recovering damages.

Before we examine the terms of the statute to determine whether the legislature, as appellants contend, intended to require *uninsured* motorist insurance protection to apply to an *insured* whose policy's liability exclusions deny him coverage, we briefly note the applicable rules of statutory construction. "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *City of Willow Springs v. Missouri State Librarian*, 596 S.W.2d 441, 445 (Mo. banc 1980). "Provisions not plainly written in the law, or necessarily implied from what is written, should not be added by a court under the guise of construction to accomplish an end the court deems beneficial." *Wilson v. McNeal*, 575 S.W.2d 802, 809 (Mo.App. 1978).

■ We also note that in Missouri, one may lawfully drive an automobile without first having secured automobile liability insurance because mandatory insurance coverage is not the public policy of this state. Nor is Missouri a "no fault" insurance state.

■ Section 379.203.1 provides that uninsured motorist insurance shall be included within automobile liability policies "for the protection of persons insured thereunder who are legally entitled to recover damages *from owners or operators of uninsured motor vehicles* because of bodily injury, sickness or disease, including death, resulting therefrom" (emphasis added). In the subsequent provisions of section 379.203, the legislature used the short–hand expression "uninsured motorist" rather than the wordy phrase "owners or operators of uninsured motor vehicles." Nowhere is there a definition of an "uninsured motorist" in the statute other than the definition enunciated at the onset of the statute, "owners or operators of uninsured motor vehicles." There is, in section 379.203.2 a qualifying definition which defines the term "uninsured motor vehicle" "to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of [the] insured . . . because of insolvency." This qualification is consistent with the legislative purpose of protecting an insured from an "owner or operator of [an] uninsured motor vehicle" in that it illustrates that the focus is on the *uninsured vehicle* and not on whether the owner or operator is an "uninsured motorist" under the circumstances of an accident. The answer is in the words of the legislature at the onset of the statute: an owner or operator of an uninsured motor vehicle is implicitly and necessarily the "uninsured motorist" from whom the statutory framework requires protection.

■ It is not correct that the terms "uninsured motor vehicle" and "uninsured motorist" are interchangeable in the statute. If this were the case, the statute would protect against "owners or operators

right of recovery against such tortfeasor in excess of the proceeds recovered from the

assets of the insolvent insurer of said tortfeasor."

of uninsured motorists", a patently absurd construction. "We presume the legislature did not intend to enact an absurd law, . . and in construing the [a]ct . . . we seek to promote the purpose and objects of the statute and to avoid any strained and absurd meaning,'" *State ex rel. Safety Ambulance, Inc. v. Kinder,* 557 S.W.2d 242, 247 (Mo. banc 1977). Alternatively, if the argument is that the terms "uninsured motor vehicles" and "uninsured motorist" are interchangeable but that the statute must be read to protect against "uninsured motorist" and not "owners or operators of insured motorists," then such a construction requires that we strike from the statute the words "owners or operators." It is a rule of statutory construction, however, that "significance and effect should, if possible, be attributed to every word, every phrase, sentence and part thereof, and words of phrases may be stricken out only in extreme cases." *State ex rel. Smith v. Atterbury,* 364 Mo. 963, 270 S.W.2d 399, 404 (1954). The only plausible reading of the statute is that the terms "uninsured motor vehicle" and "uninsured motorist" are not interchangeable, and that the statute means what it says in its provision *for protection* against "owners or operators of uninsured motor vehicles."

The statute directs, at section 379.203.1, that the uninsured motorist statute be read together with the Motor Vehicle Safety Responsibility Law, section 303.010 *et seq.,* RSMo 1978, at least insofar as the required limits for bodily injury or death are concerned. The Motor Vehicle Safety Responsibility Law provides for the posting of security or the suspension of an operator's license upon the report of a motor vehicle accident that has resulted in bodily injury or death. These provisions do not apply "(1) To such operator or owner *if such owner had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accident;* . . ." § 303.030.4(1), RSMo 1978 (emphasis added). This section further provides that for such a policy to be effective under this section it must be issued by an insurance company authorized to do busi-

ness in this state and provide certain minimum monetary limits of coverage.

Under the general rule that "[w]here one statute deals with a subject in general terms and another deals with the same subject in a more minute way, the two should be harmonized if possible, "*State ex rel. Fort Zumwalt School District v. Dickherber,* 576 S.W.2d 532–37 (Mo. banc 1979), we read the uninsured motorist statute in harmony with the Motor Vehicle Safety Responsibility Law so as to establish a consistent framework and context for the term "uninsured motor vehicle" as used by the legislature. We conclude that the term as used by the legislature refers to a vehicle whose operator or owner did not have in effect at the time of the accident an automobile liability policy with respect to the motor vehicle involved in the accident. In the case at bar, Vernon Bush, as owner and operator, had in effect an automobile liability policy with respect to the motor vehicle involved in the accident in which appellants sustained their injuries. Appellants have not claimed that the policy in question did not comply with the statutory requirements of the Motor Vehicle Safety Responsibility Law. Since Vernon Bush was exempt from the sanctions of the Motor Vehicle Safety Responsibility Law by having in effect at the time of the accident a liability policy on the vehicle involved in the accident, this vehicle may not be deemed an "uninsured motor vehicle" in the context used by the legislature.

Our holding is consistent with decisions in this and other states that have studied the legislative framework created by both the uninsured motorist statute and the motor vehicle safety responsibility laws. These courts have uniformly concluded that uninsured motorist coverage extends *exactly* to the same extent as would have been available, no more and no less, if the tortfeasor had complied with the minimum requirements of the motor vehicle safety responsibility law. *Lammers v. State Farm Mut. Auto. Ins. Co.,* 48 Ala.App. 36, 361 So.2d 757, 763 (1972); *Bacchus v. Farmers*

*Ins. Group Exchange*, 106 Ariz. 280, 475 P.2d 264, 267 (1970); *Tuggle v. Government Employees Ins. Co.*, 207 So.2d 674, 675 (Fla. 1968); *Allen v. West American Ins. Co.*, 467 S.W.2d 123, 127 (Ky. 1971); *Webb v. State Farm Mut. Auto Ins. Co.*, 479 S.W.2d 148, 152 (Mo.App. 1972); *Allied Mut. Ins. Co.*, 182 Neb. 562, 156 N.W.2d 133, 138 (1968); *Holt v. State Farm Mut. Ins. Co.*, 486 S.W.2d 734, 736–37 (Tenn. 1972); *Kay v. Kay*, 30 Utah 2d 99, 513 P.2d 1372, 1373 (1973). In the *Webb* case, the court of appeals held, "It is the public policy of Missouri established by the uninsured motorist statute, then, that each insured under such coverage have available the full statutory minimum *to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility Law* [the Motor Vehicle Safety Responsibility Law]." 479 S.W.2d at 152 (emphasis added). In the case at bar, Vernon Bush, the tortfeasor, did in fact have an automobile liability policy which complied with the requirements of Motor Vehicle Safety Responsibility Law. Consequently, the uninsured motorist statute has no application.

Appellants cite section 379.203.2, RSMo 1978, as evidence that the legislature contemplated that an insured vehicle could be considered an "uninsured motor vehicle" under the uninsured motorist protection required to be included in automobile insurance policies by the statute. Section 379.-203.2 provides "For the purpose of this coverage, the term 'uninsured motor vehicle' shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to legal liability of its insured within the limits specified herein because of insolvency."

■ Appellants contend this provision shows that the legislature anticipated and thereby specifically rejected in advance the contention that since the vehicle described is insured under the policy, it is not an "uninsured motor vehicle". What appellants are saying, in effect, is that by virtue

of section 379.203.2 if MFA were unable to make payment with respect to the legal liability of its insured, Bush, by reason of MFA insolvency, then the term "uninsured motor vehicle" (or its equivalent) in the MFA policy shall be deemed to include the 1968 Plymouth automobile described in the policy. This would ascribe a nonsensical intention to the legislature, one which would accomplish nothing. If MFA is insolvent, it does no good to say that under such circumstance, the Plymouth automobile will be considered an "uninsured motor vehicle". If MFA is insolvent, appellants (passengers in the MFA vehicle) will still collect nothing, whether the Plymouth is called an insured or uninsured vehicle.

The statute makes sense, however, when applied to a situation where, for example, the MFA insured is hit by another insured vehicle and it turns out that the insurer of the second vehicle becomes insolvent. Under these conditions, by virtue of the statute, the term "uninsured motor vehicle" in the MFA policy shall be deemed to include the second vehicle (an insured vehicle where the liability insurer thereof has become insolvent). In this example, then, the MFA insured would be able to make claim against MFA (which is not the company which has become insolvent), on the basis that the second vehicle by virtue of the statute, must be considered an "uninsured motor vehicle" under the MFA uninsured motorist coverage. This is the single circumstance where the legislature has required that an insured vehicle must be considered an "uninsured motor vehicle". By section 379.203.2 the legislature did not intend a comprehensive definition of "uninsured motor vehicle", and it is not inconsistent with the statute for the policy to define an "uninsured motor vehicle" as not including the vehicle specifically insured in the policy.

■ It is further evident that rather than the legislature intending generally by section 379.203.2 that an insurer could never provide that its own insured vehicle could not be considered an "uninsured motor vehicle", the legislature had in mind a specific

situation–*i. e.,* where the insurer on the vehicle against which the driver or passengers of another vehicle were making claim becomes insolvent, then the first vehicle is to be considered an uninsured motor vehicle so far as the uninsured motor coverage on the second vehicle is concerned. Under the rule of statutory construction that "the express mention of one thing implies the exclusion of another", *Brown v. Morris*, 365 Mo. 946, 290 S.W.2d 160, 166 (Mo. banc 1956), it is fair to hold, as we do, that the statute's inclusion of a vehicle insured by an insolvent insurer as being required to be within the meaning of "uninsured motor vehicle" is limited to that special case and, further, that it constitutes a legislative declaration that a definition such as used by MFA in the case before us, where an "uninsured highway vehicle" is defined not to include the insured automobile, is permissible.

The effect of the view proposed by the dissent would be to invalidate the household exclusion and the definition of "uninsured highway vehicle", thereby greatly broadening the coverage of the policy which, of course, ultimately means higher premiums to the consumer. In this regard it bears repeating that our statute itself puts only one limitation on an insurance company with respect to what can and cannot be considered an uninsured motor vehicle. That one limitation is the instance where the liability insurer on the other automobile becomes insolvent (§ 379.203.2). Other states with similar statutes have in some instances expanded what will not be permitted to be considered an uninsured motor vehicle to include cases where coverage on the other vehicle is below the statutory minimum as to amount or where the insurer on the other vehicle has denied coverage. Our statute, as said, however, limits only as to the case where the other insurer becomes insolvent.

▉ It is also significant that § 379.203.2 expressly contains the words "subject to the terms and conditions of such coverage." It reads thus:

"For the purpose of this coverage, the term 'uninsured motor vehicle' shall, *subject to the terms and conditions of such coverage,* be deemed to include an insured motor vehicle", etc. (emphasis supplied).

Other courts have found the above proviso significant when considering whether or not the legislature by enacting the uninsured motorist coverage intended to outlaw the household exclusion.

In *Allen v. West American Ins. Co.,* 467 S.W.2d 123 (Ky. 1971), a consolidated appeal involving three claims, the question before the court, as here, was whether the uninsured motorist statute imposed liability on the insurance company in situations where the "household exclusion" provision otherwise would relieve the company from liability. In each case there was a one–car accident, with claims being made by one member of the household against the other. In each case the policy contained a "household exclusion" clause and also provided uninsured motorist coverage. In all three cases, the court on appeal denied liability on the part of the insurer. In particular, with respect to the portion of the Kentucky statute which is the same as § 379.203.2 quoted above, the court said as follows:

"In weighing that question, it is appropriate to notice the opening words of the same section of the statute, which are:
" 'For the purpose of this coverage, (UM) the term 'uninsured motor vehicle' shall, *subject to the terms and conditions of such coverage,* be deemed to include an insured motor vehicle * * * .' (Emphasis added.)
"In using the italicized language, the Legislature recognized that there would be 'terms and conditions of such coverage' to which the statute's application would be subject. In that same portion of the statute, the Legislature enumerated only three situations in which an insured motor vehicle will be deemed an 'uninsured motor vehicle' within the meaning of UM coverage. If the solons had intended that the UM provisions should become applicable with respect to

an insured vehicle regardless of the policy provisions, it is difficult to discern why the words 'subject to the terms and conditions of such coverage' were employed. What 'terms' and what 'conditions' are permissible?

" 'Household exclusion' provisions have been upheld by this court. * * * Presumably the Legislature was cognizant of that fact. * * * In adopting UM coverage the Legislature did not specify that such an exclusion would be invalid. Had that been the desired result, the General Assembly easily could have so provided. Its failure to do so affords basis for the construction that the statute does not invalidate the exclusion. Hence, the 'household exclusion' is not in derogation of the UM statute."

467 S.W.2d at 126–27.[3]

To the same effect is *United Farm Mut. Ins. Co. v. Handley*, 360 N.E.2d 247 (Ind. App. 1977). There again the question was whether or not the household exclusion clause violated the Indiana uninsured motorist statute. In that case the insured's son was seeking to make claim under the father's uninsured motorist coverage provision of the father's liability policy. The question posed, said the court, was whether it was reasonable to construe the uninsured motorist statute "as embracing an insured tortfeasor who is purportedly converted into an uninsured motorist, driving an uninsured automobile by the operation of the household exclusion clause." *Id.* at 249. The Indiana court quoted with approval the language in the Kentucky case set forth above and went on to say at 360 N.E.2d 253:

"So the absence from the Statute of any contrary definition of an uninsured vehicle and the Statute's language that liability be 'subject to the terms and conditions of such coverage' indicates legislative recognition of an insurer's right to define an uninsured automobile in a consistent manner."

The court also said at l.c. 254:

"If in passing the Uninsured Motorist Statute the Legislature intended to nullify the household exclusion, it could have expressedly so provided."

\* \* \* \* \* \*

"Such general limitations are not unreasonable in light of the statutory objective of protecting insured motorists from other motorists who are uninsured, 'subject to the terms and conditions of such coverage.' "

We agree with the Kentucky and Indiana courts regarding the language "subject to the terms and conditions of such coverage" appearing in their uninsured motorist statutes. The same reasoning applies with equal force to § 379.203.2.

IV

■ While this court has been liberal in applying the uninsured motorist statute to invalidate attempts by insurers to reduce benefits under applicable coverage, we have not been willing to use the statute to create coverage. Thus we have invalidated clauses that would have prevented "stacking" of coverage under uninsured motorist provisions, *Cameron Mut. Ins. Co. v. Madden*, 533 S.W.2d 538 (Mo. banc 1976), clauses that would have reduced benefits to the extent of payments received under the workmen's compensation law, *Douthet v. State Farm Mut. Auto Ins. Co.*, 546 S.W.2d 156 (Mo. banc 1977), and clauses that would have reduced benefits by the amounts due under the medical payment coverage of the same policy, *Webb v. State Farm Mut. Auto. Ins. Co., supra*, cited with approval in *Douthet, supra*. But Missouri courts have declined to create uninsured motorist coverage where no coverage was applicable: where the claimant was unable to identify the alleged hit and run vehicle, *Ward v. Allstate Ins. Co.*, 514 S.W.2d 576 (Mo. banc 1974); where applicable insurance, otherwise sufficient under the Motor Vehicle Safety Responsi-

---

3. As pointed out earlier, this court upheld the validity of the household exclusion in 1960, *State Farm Mut. Auto. Ins. Co. v. Ward, supra*, a fact of which presumably the legislature was aware when it enacted the uninsured motorist statute in 1967.

bility Law, failed to meet the total amount of damages of claimants—and hence a case of "*under*–insurance," *Brake v. MFA Mut. Ins. Co.*, 525 S.W.2d 109 (Mo.App.) *cert. denied*, 423 U.S. 894, 96 S.Ct. 192, 46 L.Ed.2d 126 (1975); or where provisions in the endorsement of a policy excluded from uninsured motorist coverage bodily injury to an insured while riding a motorcycle owned by the insured or a resident of his household, *Barton v. American Family Mut. Ins. Co.*, 485 S.W.2d 628 (Mo.App. 1972).

The cases cited by appellants, *Barnes v. Powell*, 49 Ill.2d 449, 275 N.E.2d 377 (1977); *Rodman v. State Farm Mut. Auto Ins. Co.*, 208 N.W.2d 903 (Iowa 1973); and *Bowsher v. State Farm Fire & Cas. Ins. Co.*, 244 Or. 549, 419 P.2d 606 (1906), have been aptly criticized for their lack of analysis:

> "The minority view seems to have no sound reasoning to support it. General statements about liberal construction of uninsured motorist statutes or construing and insurance policy against the insurer are not enough."

*United Farm Bureau Mut. Ins. Co. v. Hanley, supra* at 251. We likewise find these cases unpersuasive.

## V

In conclusion, we uphold the policy provisions barring the automobile specifically insured by the policy from being deemed an "uninsured motor vehicle". This exclusion enjoys judicial support in this state and others to prevent legal actions which may not be truly adversary and over which the insurer cannot practically defend. The exclusions in the policy are clear and unequivocal and must be applied. Nothing in the uninsured motorist statute requires a different result. The trial court did not err in sustaining respondent's motion for a directed verdict.

The judgment of the trial court is affirmed.

DONNELLY, RENDLEN, WELLIVER, MORGAN and HIGGINS, JJ., concur.

BARDGETT, C. J., dissents in separate dissenting opinion filed.

BARDGETT, Chief Justice, dissenting.

I respectfully dissent.

The issue is whether the uninsured motorist clause of the driver's insurance policy applies where the other persons in the car are members of the insured's household where the insuring provisions of the policy exclude such persons from the benefit of the public liability provisions of the policy.

If MFA were free to contract as they saw fit with respect to uninsured motorist coverage, I would be in agreement with the principal opinion. However, it does not enjoy that privilege. The statute, § 379.203 RSMo., requires the policy to contain a provision providing certain monetary coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, etc., . . . ."

Now it is clear that the driver's widow, Betty Bush, (now Betty Harrison), and Kathy Pridgen, stepdaughter of Vernon Bush, were "insureds" for a number of purposes under the policy. As members of the insured's household they were insured if they were *driving* the car under all coverages and were "insureds" under the medical pay provisions at the time of the instant accident. However, they were excluded from the *benefits* of the liability section. That is to say that even if Kathy Pridgen, for instance, sued the driver (or his estate) and recovered a judgment the MFA would not be required to pay out any money under the liability section of the policy. The "household exclusion" excludes the insured and member of the household from being the *recipient* of money paid under the liability section. It does not exclude them from having the status of an "insured" for all purposes and they were "insureds" when this accident happened.

The *statute* is direct and to the point. It requires uninsured motorists coverage for the benefit of persons insured under the policy who are legally entitled to recover damages from the operator of an uninsured

motor vehicle. Here, Kathy Pridgen, is legally entitled to sue, and if successful, recover damages from the driver's estate and she is an insured under the policy and the auto was uninsured as to her.

In my opinion the insurance policy cannot exclude from uninsured motorist coverage anyone for whom the statute mandates coverage. Betty Bush and Kathy Pridgen are such persons. I therefore dissent.